**Hugh S. MAXWELL, Plaintiff,**

v.

**SOUTHWEST NATIONAL BANK, WICHITA, KANSAS; et al., Defendants.**

**Civ. No. 83–4362.**

United States District Court, D. Kansas.

Aug. 30, 1984.

As Amended Oct. 23, 1984.

Fred W. Phelps, Phelps-Chartered, Topeka, Kans., for plaintiff.

William L. Fry, Wichita, Kans., for plaintiff/intervenor.

Robert Minter, Minter & Willis, Jack Focht, Smith, Shay, Farmer & Wetta, Wichita, Kans., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This case stems from the October 30, 1983, death of Icy Maxwell, who, according to the allegations of plaintiff's complaint, was a Wichita millionairess. Plaintiff claims that the defendants schemed to defraud him of the benefit of one-third of the decedent's estate, and that as a result of the intentional acts of fraud by defendants, the decedent was induced to sign a will giving sums up to One Hundred Thousand Dollars ($100,000) each to defendants Johnson and Stimpson, to Johnson's wife, children and stepchildren, and to the Stimpsons' daughter and grandchildren, none of whom were related to the decedent and most of whom she did not know.

The matter is before the court on the motion of two of the defendants, Edwin Leroy Stimpson and Lillian Pauline Stimpson, to dismiss. The other defendants did not join in the motion to dismiss. On May 3, 1984, this court granted the motion of Jean Hansis, Loretta Defries and Loretta Harbaugh Kloer to intervene as plaintiffs in this action. They have not filed briefs regarding the motion to dismiss. Also in the May 3rd Order the court considered the motion to dismiss currently before the court and directed the parties to submit additional briefs. The parties have done so, and the court is now prepared to rule.

Plaintiff advances claims under three theories: (1) wrongful interference with an inheritance; (2) interference with a prospective business advantage; and (3) mail fraud and wire fraud in violation of the civil damages provision of the Racketeer Influenced and Corrupt Organizations Act [hereinafter RICO], 18 U.S.C. §§ 1961–1964.

■ In considering a motion to dismiss, the factual allegations of the complaint must be taken as true and all reasonable inferences must be indulged in favor of plaintiff. *Mitchell v. King,* 537 F.2d 385 (10th Cir.1976); *Dewell v. Lawson,* 489 F.2d 877 (10th Cir.1974). A complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The question is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

I. *Interference With Inheritance*

■ Federal courts have only limited power in matters related to probate. The equity jurisdiction of the federal courts is that conferred by the Judiciary Act of 1789 and Section 24(1) of the Judicial Code, and is only as broad as that possessed by the English Court of Chancery in 1789. The Court of Chancery's equity jurisdiction did not extend to probate matters. *Markham v. Allen,* 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946). Federal courts may not probate or administer a will; however, federal courts have jurisdiction "to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* at 494, 66 S.Ct. 298.

■ This court must look to Kansas law to determine this inquiry. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The court must determine whether under Kansas law the claims are such as would traditionally have been cognizable only in a probate court or whether the claims are such as could be asserted in a court of general jurisdiction. *Hinman v. Petefish,* No. 79–4049 (D.Kan., *unpublished,* 3/02/83).

The Kansas Supreme Court addressed intentional interference with an inheritance in *Axe v. Wilson,* 150 Kan. 794, 96 P.2d 880 (1939). The *Axe* decision was discussed and interpreted by Judge Rogers in *Hinman, supra,* as follows:

In *Axe,* the plaintiff, the only child of her father, brought several actions against her father's second wife after her father's death. One action was to contest the will of her father on grounds of fraud and undue influence of the defendant. Another action was to recover damages from the defendant for her malicious interference with plaintiff's alleged right of inheritance in having induced the will by fraud and undue influence. The Kansas Supreme Court was directly confronted with the issue of whether Kansas recognized the tort of intentional interference with an inheritance. After listing the conflicting cases on the question, the court specifically declined to decide the issue. However,

the Court went on to hold that, under the circumstances of the case, plaintiff's remedy lay in her action to contest the will and not in an action for damages. The court noted that the action to contest the will had been timely brought and presented the same issues as to fraud and undue influence as those of the damage action and that if the damage action was successful the amount recovered would be simply the value of the property which plaintiff would obtain in case of a successful contest of the will. It seems implicit in the court's ruling that under other circumstances an action for damages might lie. Distinguishing its case from situations where such an action might be allowed, the Court stated:

> It is highly important to bear in mind that the instant action is not one to recover damages in the nature of expenditures or costs, or damages of similar character, occasioned by a successful effort to contest the will. Nor is it an action to recover damages in the nature of costs and expenditures resulting from a successful effort to probate a will which had been spoliated by another, as were allowed in·the early case of *Taylor v. Bennett*, 1 O.C.D. 57. Nor is this an action to recover damages for fraudulent and malicious interference with one's right of inheritance where the alleged fraud, in the exercise of diligence, is not and could not have been discovered by the heir until it was too late to contest the will. Nor is it an action to recover damages of any character, other than the loss of her alleged part of the corpus of the estate which plaintiff could recover in a successful action to contest the will, which actually might have been suffered by reason of the tortious act.

Id., 96 P.2d at 886.

Thus, the Court intimated that the result might have been different had the case been one in which the matters complained of were not and could not have been discovered until too late to permit a contest of the will. However, the Court's ruling appears clear, considering their substantial reliance upon *Rishel v. McPherson County*, 122 Kan. 741, 253 P. 586 (1927), that an individual's remedy when victimized by another's fraud and undue influence in the inducement of the execution of a will lies in an action to contest the will and not in an action for damages when the remedy of the will contest is adequate and available. *Hinman, supra*, at 19–21.

■ In the case at bar, plaintiff contends that although the state court probate procedure was technically "available," it certainly was not "adequate." Plaintiff does not establish why the will contest procedure would have been inadequate. As noted in *Hinman,* if the plaintiff had challenged the will and succeeded, he could have obtained all the relief he could receive as damages in this case. *Id.* at 22. Furthermore, the court in *Hinman* found that under Kansas law, for purposes of determining the adequacy of relief, an award of punitive damages is not considered a valid expectation. *Id.*

Therefore, this court concludes that plaintiff has not stated a claim upon which relief can be granted with respect to plaintiff's claim of intentional interference with an inheritance.

## II. *Interference With A Prospective Business Advantage*

■ In *Professional Investors Life Ins. Co. v. Roussel*, 528 F.Supp. 391 (D.Kan. 1981), the court set forth the following elements of the tort of interference with a prospective business advantage: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy by the defendants; (3) that, except for the conduct of the defendants, plaintiff was reasonably certain to have continued in the relationship or realized the expectancy; (4) intentional misconduct by defendants; and (5) damage suffered by plaintiff as a direct or proximate result of defendants' misconduct. *Id.* at 399. American Bar Associa-

tion, Model Jury Instructions For Business Tort Litigation, § 2.02[2] (1980).

■ Plaintiff alleges that prior to the death of Icy Maxwell plaintiff had a reasonable business expectation of receiving one-third of Icy Maxwell's estate; that defendants knew of this expectancy; that defendants intentionally acted to interfere with that expectancy; and that damage was suffered by plaintiff as a result.

While this court is reluctant to allow creative pleading to transform an interference with inheritance claim into an interference with business advantage claim, these defendants have not showed the court any reason not to allow the claim to proceed. The court has before it only the bare pleadings. The court anticipates discovery will yield evidence of whether any expectancy of plaintiff could be termed a "business expectancy" rather than a personal expectation of an inheritance. But at this point the motion to dismiss must be denied.

### III. *RICO*

Plaintiff seeks recovery under the civil damages provision of RICO, 18 U.S.C. § 1964(c), which affords a trebel damage recovery to any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962. RICO was enacted as part of the Organized Crime Control Act of 1970, and, at least in its criminal provisions, has been interpreted broadly in its efforts to curb those activities which are thought to be associated with organized crime. See *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The breadth of the civil remedy is the subject of greater dispute, and a split among the United States Courts of Appeal has developed. Neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has considered the matter.

The defendants have moved to dismiss the civil RICO cause of action, arguing that RICO does not extend to the type of fraud allegations which are before the court in this case. That argument has been buttressed in recent weeks as the Second Circuit Court of Appeals has ruled that private civil actions under RICO may be maintained only after the defendant has been convicted of predicate criminal acts under § 1962. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 741 F.2d 482 (2nd Cir., No. 83–7965, 7/25/84). Some district courts have also restricted the application of civil RICO to cases where it is alleged and proved that the defendants are organized criminals. See *Waterman Steamship Corp. v. Avondale Shipyards, Inc.,* 527 F.Supp. 256 (E.D. La.1981); *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736 (N.D.Ill. 1981); *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109 (S.D.N.Y.1975).

*Sedima, supra,* was one of three cases issued on successive days in which the Second Circuit ruled on matters related to civil RICO. See also *Banker's Trust Co. v. Rhoades,* 741 F.2d 511 (2nd Cir., No. 83–7636, 7/26/84); and *Furman v. Cirrito,* 741 F.2d 524 (2nd Cir., No. 84–7113, 7/27/84). *Sedima* established the law in that circuit that a plaintiff in civil RICO must establish that a defendant has been convicted of the predicate acts. The court noted that there has been an explosion of civil RICO legislation, and that Congress was unaware of the possible implications of § 1964(c) when it passed the legislation. In the Second Circuit's opinion, Congress would not have intended to provide such a broad federal remedy for traditional common law wrongs without greater mention of the sweep of the statute. *Id.*

The Second Circuit noted that § 1964 is modeled after § 4 of the Clayton Act, which reads: "Any person who shall be injured in his business or property *by reason of anything forbidden* in the antitrust laws may sue;" whereas § 1964(c) reads: "Any person injured in his person or property *by reason of a violation* of § 1962 of this chapter may sue." (Emphasis added.) The court found the difference instructive, and found the change was made with the specific intent that a "violation" of § 1962 be interpreted as a "conviction" of a predicate act under § 1962. This court finds the reasoning of the Second Circuit to be strained in an attempt to limit the effect of

the statute. *Id.* The word "violation" can only be given its common and ordinary meaning, that of an "infringement" or a "breach of a right or a duty." There is no support in logic or in the legislative history for the Second Circuit's reading of the language.

The Second Circuit also reasoned that the Act is designed to provide new penalties and remedies to combat conduct that explicitly has already been found criminal. In a civil context, the Second Circuit held, there is no way to know whether the conduct is "already criminal," a problem compounded by the lower standard of proof in civil cases. The Second Circuit inferred that had Congress considered this problem, it would have explicitly required previously established convictions in the context of § 1964(c). *Id.* This reasoning is unpersuasive. *Sedima* fashions a limitation which runs completely contrary to the express

language of the statute and then imputes an intent upon Congress which is not justified by the legislative history.

■ The decisions limiting the application of civil RICO to those who have been convicted of predicate acts or those shown to be involved in "organized crime" reflect a well-intentioned attempt to slow the growing burden which civil RICO cases have placed on federal court dockets already laden with backlogs of cases. The language of the statute and the legislative history as understood by this court do not countenance such limitations of civil RICO, however. First, the language of the statute[1] does not support the limitations imposed by the above-cited courts. Second, the legislative history shows that Congress was aware of the broad sweep of the statute when it was enacted.[2]

---

1. 18 U.S.C. § 1964(c) states:

   Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 USCS § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

2. In Note, *Civil RICO: The Temptation and Impropriety of Judicial Restriction,* 95 Harvard L.Rev. 1101 (1982), the author analyzes the legislative history of the statute and finds two reasons why Congress chose not to restrict RICO to organized criminals.

   First, a number of representatives feared that any attempt to define the concept of "organized crime" with the precision necessary to void challenges for vagueness would cast doubt on the statute's constitutionality. "Organized crime" describes less a particular kind of offense than the associations of the offender: to avoid rendering the direct proscription of organized crime" overly vague would require defining the prohibited association as well as the activity. But when Representative Biaggi proposed an amendment that would have specifically criminalized membership in the Mafia or La Cosa Nostra, Representative Celler objected that such terms were "imprecise, uncertain, and unclear" and that mere membership in an organization should not be punished. Representative Poff objected that such an amendment might violate the Supreme Court's rulings striking down statutes that created status offenses or outlawed membership in certain organizations or "gang[s]." Congress rejected the amendment.

   Second, Congress did not want to reduce RICO's potency by imposing a burden of proof that would be difficult or impossible to meet. In fact, the capacity of organized criminals to evade prosecution by suppressing evidence of their unlawful connections was one of Congress' primary concerns in enacting organized crime legislation. Consequently, Congress sought to reach organized criminals by imposing sanctions for the types of activities in which they generally engage, rather than by directly proscribing the criminal association. Responding to criticism that RICO's provisions were overinclusive, Senator McClellan, one of the sponsors of the bill, asserted that "the Senate report does not claim … that the listed offenses are committed *primarily* by members of organized crime, only that those offenses are characteristic of organized crime."

   The *Barr* requirement thus imposes a burden of proof that Congress recognized could defeat the objectives of RICO. An organized criminal who violates the statute but whose association to organized crime cannot be proved is the precise target of RICO. Yet Congress determined that statutory violators without links to organized crime should also be subject to RICO's criminal and civil sanctions, in an attempt to avoid both an impossibly stringent burden of proof and possible constitutional infirmity. Recent decisions that purport to rely on congressional intent in imposing the *Barr* requirement overlook the *means* that Congress employed to achieve its ends: it chose to risk the imposition of liability on defendants not tied to organized crime in order to cast a sufficiently wide net.

The Seventh Circuit Court of Appeals recently ruled that there is no justification in the legislative history for the defendants' argument. That court stated:

> The chief problem with this argument is that Congress was well aware of the range of application authorized by RICO's capacious statutory language. But Congress was equally adamant that the fight against organized criminal social exploitation not be impeded by an overly narrow definition of actionable conduct.... In short, Congress chose to provide civil remedies for an enormous variety of conduct, balancing the need to redress a broad social ill against the virtues of tight, but possibly overly astringent, legislative draftsmanship. It is not for this court to reassess the balance struck.

*Schacht v. Brown*, 711 F.2d 1343, 1354–55 (7th Cir.1983), *cert. denied* —— U.S. ——, 104 S.Ct. 508, 509, 78 L.Ed.2d 698 (1983).

The Seventh Circuit is not isolated in its holding. The Fifth and Eighth Circuits have also held that plaintiffs under civil RICO need not allege or prove a conviction or link to organized crime. See *Owl Construction Co., Inc. v. Ronald Adams Contractor, Inc.*, 727 F.2d 540 (5th Cir.1984); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272 (7th Cir.1983); *Bennett v. Berg*, 685 F.2d 1053 (8th Cir. 1982), *aff'd.* 710 F.2d 1361 (8th Cir.) (en banc), *cert. denied* —— U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). This court agrees with the authority in these cases, and adopts the position of the Fifth, Seventh and Eighth Circuits.

■ Thus, to survive a motion to dismiss, a plaintiff in a civil RICO action must allege that he can meet the standard of proof as set forth in *Alcorn County, Miss. v. U.S. Interstate Supplies*, 731 F.2d 1160 (5th Cir.1984), which states:

> Broadly stated, a civil RICO claimant must prove (1) a violation of the substantive RICO statute, 18 U.S.C. § 1962, and (2) an injury to the plaintiff's "business

or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). In order to establish a violation of 18 U.S.C. § 1962(c), the plaintiff must prove:

> (1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant [was "employed by" or] "associated with" the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity, *i.e.*, by committing at least two acts of racketeering activity designated in 18 U.S.C.A. § 1961(1).

*Id.* at 1167–68, *quoting United States v. Phillips*, 664 F.2d 971 (5th Cir.1981).

For the purposes of this statute, an "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. 1961(4). "Racketeering activity" includes, *inter alia*, "any act which is indictable under title 18, United States Code ... section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud) ..." 18 U.S.C. 1961(1)(B). To be a "pattern of racketeering activity," there must be "at least two acts of racketeering activity, one of which occurred after [October 15, 1970] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity. 18 U.S.C. 1961(5).

■ Plaintiff alleges an on-going enterprise consisting of a bank, bank officers, lawyers and others, named and unnamed, engaged in a pattern of racketeering activities including acts indictable under the mail and wire fraud statutes in an unlawful scheme whereby defendants identify and target elderly rich people for the purpose of defrauding them, their heirs and legatees out of their estates, all in violation of § 1962, and that plaintiff (and each intervenor) was "injured in his business or property by reason of" said violations.

*Id.* at 1107–09. (Footnotes and citations omitted.)

In *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954), the United States Supreme Court held that mail fraud under 18 U.S.C. 1341 requires proof of (1) a scheme to defraud, and (2) the mailing or causing the mailing of a letter or other item for the purpose of executing the scheme. Under *Kann v. United States,* 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), the federal mail fraud statute does not reach all frauds, but only those "in which the use of the mails is a part of the execution of the fraud." *Id.* at 95, 65 S.Ct. at 151. The mailing must be for the purpose of executing the scheme or some essential part of the scheme, but it is "not necessary that the scheme contemplate the use of the mails as an essential element." *Pereira,* 347 U.S. at 8, 74 S.Ct. at 362. The requirements under the wire fraud statute are similar.

The court finds that plaintiff herein has alleged sufficient factual allegations that, taking the allegations as true and indulging in all reasonable inferences in favor of the plaintiff, would entitle him to relief under civil RICO. The court notes that defendants have not challenged the sufficiency of the plaintiff's averments of fraud or mistake, which under Rule 9(b), Federal Rules of Civil Procedure, must be set forth with particularity.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion to dismiss is hereby granted as to plaintiff's claim of wrongful interference with an inheritance, and is hereby denied in all other respects.