**David ARNOLD, Plaintiff,**

v.

**AIR MIDWEST, INC., A.R. Paquette, Air Lines Pilots Association, International, and John G. Schleder, Defendants.**

**No. 93–2426–JWL.**

United States District Court,
D. Kansas.

Feb. 7, 1995.

Edward A. McConwell, Law Offices of Edward A. McConwell, Overland Park, KS, for David Arnold.

Michael R. Lawless, Overland Park, KS, E. Scott Smith, M. Elizabeth Ortega, Ford & Harrison, Atlanta, GA, Michael R. Lawless for Air Midwest Inc., A.R. Paquette.

Robert L. Dameron, Blake & Uhlig, P.A., Kansas City, KS, Marcus C. Migliore, Gary Green, Air Line Pilots Ass'n Intern. Legal Dept., Washington, DC, for Airline Pilots Ass'n, John G. Schleder.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

This case involves various claims brought by plaintiff David Arnold against defendants Air Midwest, Inc.; A.R. Paquette; the Air Lines Pilots Association, International ("ALPA"); and John G. Schleder arising out of plaintiff's termination from his employment as a pilot for Air Midwest. Plaintiff has asserted state law claims against Air Midwest and Paquette for tortious interference, wrongful termination and retaliatory discharge. Plaintiff has also asserted against Air Midwest a defamation claim and an unfair labor practices claim that Air Midwest breached its duty of good faith and fair dealing.[1] Finally, plaintiff has asserted what he terms as a "Declaratory Judgment" claim in which he seeks a determination from this court that the provision in the ALPA–Air Midwest collective bargaining agreement providing for a Systems Board review of management actions "should be determined inapplicable to this controversy because of the clear conflict between Arnold and ALPA and the vagueness of the provisions themselves."

Currently pending before this court are the motion by defendants Air Midwest and A.R. Paquette for summary judgment (Doc. # 62) and the motion by cross-defendant ALPA for summary judgment as to the cross-claim of defendant Air Midwest (Doc. # 71).

In their motion for summary judgment, defendants Air Midwest and Paquette contend that plaintiff's state law claims of tortious interference, wrongful discharge and defamation are pre-empted by the Railway Labor Act ("RLA"), which vests exclusive jurisdiction over these claims in the System Board of Adjustment established pursuant to the collective bargaining agreement entered into by Air Midwest and ALPA. Further, Air Midwest and Paquette contend that, in any event, plaintiff is unable to raise a genuine issue of material fact as to any of his state law claims, including his claim for retaliatory discharge. Finally, Air Midwest contends that plaintiff's unfair labor practices claim based on Air Midwest's alleged breach of its duty of good faith and fair dealing is barred due to plaintiff's failure to bring his claim within the applicable statute of limitations period.

For the reasons set forth below, the court finds that plaintiff's state law claims are not pre-empted by the RLA. The court further finds that genuine issues of material fact exist as to all of his state law claims except his tortious interference claim. The court further finds that plaintiff's unfair labor practices claim against Air Midwest is barred due to plaintiff's failure to bring this claim within the applicable statute of limitations period. The court also finds that plaintiff's "declaratory judgment" claim is moot. Finally, the court finds that cross-defendant ALPA's motion for summary judgment should be granted.

### II. Factual Background

Defendant Air Midwest is a regional airline which operates as USAir Express under a licensing agreement with USAir, Inc. As a USAir Express carrier, Air Midwest provides passenger feed from small and medium-sized cities to and from connecting USAir flights at its USAir hub in Kansas City, Missouri. Air Midwest also provides point-

---

1. In an order dated May 24, 1994, plaintiff's claims against defendants ALPA and Schleder for breach of contract, breach of fiduciary duty, malpractice and breach of the duty of fair representation were dismissed. *Arnold v. Air Midwest, Inc.*, 1994 WL 247442 (D.Kan. May 24, 1994) *reconsideration denied* 1994 WL 482633 (D.Kan. August 3, 1994).

to-point service between several cities in the states of Arkansas, Nebraska, Iowa, Missouri and South Dakota. Air Midwest's pilots at all times relevant to this action were represented by the Air Line Pilots Association ("ALPA"). Air Midwest and ALPA entered into a collective bargaining agreement governing the employment of pilots at Air Midwest.

Prior to September of 1992, plaintiff Arnold had been employed by Air Midwest as a pilot for approximately five years. During the last year of his career at Air Midwest, he had flown as a captain of the Beechcraft 1900 aircraft; prior to that time, he had been a pilot of Air Midwest's Metroliner aircraft.

Pursuant to the collective bargaining agreement, Air Midwest pilots were paid an hourly rate for each of their flights based upon a standard "block time" established for that flight. For example, a flight between Kansas City and Wichita might be assigned a block time of %oths of an hour based upon prior history. A pilot would therefore earn %oths of his hourly rate of pay for a flight between those cities. The block times for each particular route are based upon the average of actual flight times recorded over the last six months for that route and are recalculated twice a year.

In the fall of 1992, Air Midwest management began to suspect that Mr. Arnold was purposefully slowing down his flight operations. Accordingly, Mr. Paquette, who was the President and Chief Operating Officer of Air Midwest, requested that Chief Pilot Rick Novak investigate the matter.

On October 19, 1992, a meeting was held between Mr. Novak and Mr. Arnold. The substance of the conversations between the parties at that meeting is much in dispute. Mr. Novak contends that Mr. Arnold told him at that meeting that he had undertaken slow down operations with his aircraft in order to affect his rate of pay as a part of the ongoing negotiations between ALPA and Air Midwest. Mr. Arnold, on the other hand, contends that he informed Mr. Novak that any actions he had undertaken which had slowed the flight times of his aircraft were undertaken for safety reasons, following a review Mr. Arnold had undertaken of relevant FAA guidelines and the flight operations manual for the Beechcraft aircraft.

Following the October 19, 1992 meeting, another meeting was held on October 21, 1992. Present at this meeting were Mr. Arnold, Mr. Novak and Mr. Paquette, among others. Again, the parties differ on the substance of the conversations at this meeting. Mr. Novak and Mr. Paquette contend that Mr. Arnold first claimed that his reasons for slowing his aircraft operations concerned safety, but later admitted that he had slowed operations in order to affect his pay. Mr. Arnold contends that he at all times asserted that he had slowed his operations for safety reasons.

On October 27, 1992, Mr. Arnold, Mr. Schleder, his ALPA attorney, and Paul Mintor, a union representative, met with Mr. Paquette, Mr. Novak, and William Hiers, an Air Midwest attorney, regarding the investigation into the alleged slow down actions by Mr. Arnold. During that meeting, Mr. Arnold admitted to engaging in a "slow down" effort for the purpose of affecting the semiannual calculation of his routes' "block times." At the meeting Mr. Arnold further stated that he had engaged in these slow down activities in order to increase his pay, and he specifically denied that his actions had anything whatsoever to do with safety.

Following this meeting, Air Midwest informed Mr. Arnold that it had decided to terminate his employment. Mr. Arnold was terminated by Air Midwest on November 6, 1992.

Following his termination, ALPA, on behalf of Mr. Arnold, filed a written appeal of the termination with Air Midwest management pursuant to the provisions of the Air Midwest-ALPA collective bargaining agreement. Subsequently, plaintiff discharged his ALPA counsel and retained private counsel for the purpose of meeting with Air Midwest on December 2, 1992 to request reconsideration. Following denial of his grievance, plaintiff's personal attorney then filed requests for review of the termination with the ALPA-Air Midwest Systems Board, the mandatory, exclusive joint grievance resolution panel created by the ALPA-Air Midwest

collective bargaining agreement. Nevertheless, despite prompting from Air Midwest counsel, Mr. Arnold's private counsel thereafter failed to pursue the matter, and no hearing date was ever set. On October 20, 1993, approximately one year after his termination, plaintiff filed this action.

### III. Summary Judgment Standards

A motion for summary judgment gives a judge an initial opportunity to assess the need for a trial without weighing the evidence or determining credibility. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

The party who files a motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact concerning its claims. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. The nonmoving party may not simply rest on its pleadings in the case but has the affirmative duty to come forward with facts to establish that a genuine issue exists necessitating a trial in the case. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an other-

wise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555.

### IV. Discussion

#### A. RLA Preemption

As their first basis for summary judgment, defendants Air Midwest and Paquette argue that plaintiff's claims for tortious interference, defamation, and that portion of Count II which alleges wrongful discharge are preempted by federal law. Specifically, defendants argue that the mandatory arbitral mechanism of the RLA, 45 U.S.C. § 151a, precludes plaintiff from bringing these claims.

The scope of RLA pre-emption was extensively discussed in a recent Supreme Court decision, *Hawaiian Airlines, Inc. v. Norris*, — U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). In that case, respondent Norris was terminated from his job as an aircraft mechanic by petitioner Hawaiian Airlines, Inc. (HAL), after refusing to sign a maintenance record, as required by his collective bargaining agreement (CBA), for a plane he considered unsafe, and reporting his concerns to the Federal Aviation Administration. Norris then invoked the grievance procedure outlined in the CBA and a grievance hearing was held. HAL accused Norris of insubordination, claiming that his refusal to sign the record violated the CBA's provision that an aircraft mechanic "may be required to sign work records in connection with the work he performs." Norris relied on the CBA's guarantees that an employee may not be discharged without just cause and may not be disciplined for refusing to perform work that is in violation of health or safety laws. The hearing officer terminated Norris for insubordination. *Id.* at ——, 114 S.Ct. at 2242.

Still conforming to the CBA procedures, Norris appealed his termination. Before his appeal hearing took place, HAL offered to reduce Norris' punishment to suspension without pay, but warned him that "any further instance of failure to perform [his] duties in a responsible manner" could result in discharge. Norris did not respond to this offer, nor, apparently, did he take further steps to pursue his grievance through the CBA procedures. *Id.*

On December 18, 1987, Norris filed suit against HAL in Hawaii circuit court. His complaint included two wrongful discharge torts—discharge in violation of the public policy expressed in the Federal Aviation Act and implementing regulations, and discharge in violation of Hawaii's Whistleblower Protection Act. He also alleged that HAL had breached the CBA. HAL removed the action to the United States District Court for the District of Hawaii, which dismissed the breach of contract claim as pre-empted by the RLA, and remanded the other claims to the state trial court. The trial court then dismissed Norris' claim of discharge in violation of public policy, holding that it, too, was pre-empted by the RLA's provision of exclusive arbitral procedures. The state court certified its order as final to permit respondent to take an immediate appeal.

In the meantime, Norris had filed a second lawsuit in state court, naming as defendants three of HAL's officers who allegedly directed, confirmed, or ratified the claimed retaliatory discharge. He again sought relief for, among other things, discharge in violation of public policy and of the Hawaii Whistleblower's Protection Act. The Hawaii trial court dismissed these two counts as pre-empted by the RLA and certified the case for immediate appeal. *Id.* at ——, 114 S.Ct. at 2243.

The Supreme Court of Hawaii reversed in both cases, concluding that the RLA did not pre-empt respondent's state tort actions. That court concluded that the plain language of § 153 First (i) does not support pre-emption of disputes independent of a labor agreement, and interpreted the opinion in *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989), to limit RLA pre-emp-

tion to "disputes involving contractually defined rights." The court rejected HAL's argument that the retaliatory discharge claims were pre-empted because determining whether HAL discharged respondent for insubordination, and thus for just cause, required construing the CBA. The court pointed to *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), a case involving § 301 of the Labor Management Relations Act, 1947 (LMRA), 29 U.S.C. § 185, in which the Court held that a claim of wrongful termination in retaliation for filing a state worker's compensation claim did not require interpretation of a collective bargaining agreement, but depended upon purely factual questions concerning the employee's conduct and the employer's motive. Because the same was true in this case, said the Supreme Court of Hawaii, respondent's state tort claims were not pre-empted. *Id.* The Supreme Court granted certiorari in the consolidated cases.

The Supreme Court began its inquiry by noting that "[w]hether federal law pre-empts a state law establishing a cause of action is a question of congressional intent," and that Congress' "purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Id.* at ——, 114 S.Ct. at 2243. To this end, the RLA establishes a mandatory arbitral mechanism for "the prompt and orderly settlement" of two classes of disputes. The first class, major disputes, concerns rates of pay, rules or working conditions and relate to the formation of collective bargaining agreements or efforts to secure them. *Id.* at ——, 114 S.Ct. at 2244. The second class, minor disputes, grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions and involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation. *Id.*

█ The RLA pre-empts state law claims that involve minor disputes because those disputes are subject to mandatory arbitration. *See Davies v. American Airlines, Inc.,* 971 F.2d 463, 465 (10th Cir.1992). However, the *Norris* court held that the

RLA's mechanism for resolving disputes does not pre-empt causes of action to enforce rights that are independent of the collective bargaining agreement. The court stated that:

> pre-emption merely ensures that federal law will be the basis for interpreting collective bargaining agreements, and says nothing about the substantive rights a State may provide to workers when the adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for ... pre-emption purposes.

*Norris*, —— U.S. at ——, 114 S.Ct. at 2249 *quoting Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 408–10, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988).

The Supreme Court held that Norris' state law wrongful discharge claims, for discharge in violation of public policy expressed in FAA regulations and discharge in violation of Hawaii's Whistleblower Protection Act, were independent of the collective bargaining agreement, rejecting HAL's argument that resort to the agreement was necessary to determine whether Norris was, in fact, wrongfully discharged. *Id.* at ——, 114 S.Ct. at 2251. The court found that the state tort claims for retaliation should not be pre-empted because they required only the purely factual inquiry into any retaliatory motive of the employer, and did not require an interpretation of the collective bargaining agreement. *Id.*

Relying on the parameters set out by the Supreme Court in *Norris*, the court will now examine each of Mr. Arnold's state law claims as to the applicability of RLA pre-emption. Mr. Arnold has brought state law claims for wrongful termination and retaliatory discharge, defamation and tortious interference.

Count II of Mr. Arnold's complaint is titled as "wrongful termination and retaliatory discharge." Two separate claims are contained within the count. First, Mr. Arnold charges that Air Midwest breached an implied employment contract by wrongfully terminating him without "good cause," as determined by Section 19 D of the collective bargaining agreement and various sections of the employee handbook. Second, Mr. Arnold charges that his discharge was in retaliation for his insistence that his aircraft be operated in compliance with pertinent FAA regulations.[2]

■ Defendants argue vigorously that plaintiff's breach of an implied employment contract claim that Air Midwest wrongfully terminated him without good cause, as determined by Section 19 D of the collective bargaining agreement and various sections of the employee handbook, is subject to RLA pre-emption because it requires this court to interpret the collective bargaining agreement itself. However, following a thorough analysis of the underlying components of plaintiff's claim, the court does not agree.

■ Kansas has been, and remains today, an employment-at-will state. *Johnson v. National Beef Packing Co.*, 220 Kan. 52, 551 P.2d 779 (1976). Under the employment-at-will doctrine, employment is terminable at the will of either the employer or the employee for good cause or no cause at all. An exception to this doctrine exists, however, when there has been an implied agreement to the contrary. *See Berry v. General Motors Corp.*, 838 F.Supp. 1479, 1491 (D.Kan. 1993). In such cases, an implied obligation exists "on the part of the employer not to terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will." *Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 509, 738 P.2d 841 (1987).

In this case, plaintiff alleges that there was an implied contract, based upon terms contained in the employee handbook, which pre-

---

**2.** Defendants concede that based on the Supreme Court's decision in *Hawaiian Airlines, Inc. v. Norris*, —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994), plaintiff's retaliatory discharge claim is not subject to RLA pre-emption.

vented Air Midwest from firing him without just cause. Defendants, on the other hand, argue that any rights plaintiff may have had to continued employment must arise out of the collective bargaining agreement and, therefore, plaintiff's claim is pre-empted because resolution of his claim would necessarily involve an interpretation of the collective bargaining agreement. The court finds, however, that the collective bargaining agreement itself, while it does contain procedural guidelines for an employee to follow in front of the Systems Board for reinstatement, is wholly devoid of any language regarding proper grounds for termination of an employee, and fails to contain any language about whether ALPA members are at-will employees or could only be discharged for cause. Plaintiff's implied contract claim for wrongful discharge, if indeed he has one, is totally dependent on an interpretation of the employee handbook. Defendants have made no claim that the employee handbook is a part of the collective bargaining agreement. Accordingly, the court finds that the meaning of terms in the collective bargaining agreement are not at issue in plaintiff's implied contract wrongful termination claim and the claim is therefore not subject to RLA pre-emption.

■ Defendants next argue that plaintiff's claim of defamation should be subject to RLA pre-emption. Defendants argue that any alleged defamatory statements they made necessarily occurred in the course of Air Midwest's investigation of plaintiff's behavior which led to his termination. Defendants contend that Air Midwest's right to thoroughly investigate alleged misconduct arises out of the collective bargaining agreement and, therefore, any claim for defamation which arises out of such an investigation should properly be pre-empted by the RLA. Defendants rely on *Henegar v. Banta,* 27 F.3d 223 (6th Cir.1994), in which the Sixth Circuit held that a defamation claim was subject to RLA pre-emption under circumstances similar to the present case.

■ Under Kansas law, defamation has been defined as communicating to a person false information tending to expose another living person to public hatred, contempt and ridicule. *See Lindemuth v. Goodyear Tire and Rubber Co.,* 19 Kan.App.2d 95, 103, 864 P.2d 744 (1993). The elements of a defamation claim include: (1) use of false and defamatory words; (2) communication to a third party; and (3) resulting harm to the reputation of the person defamed. *See Batt v. Globe Engineering Co., Inc.,* 13 Kan. App.2d 500, 504, 774 P.2d 371 (1989). Kansas courts have recognized defamation actions filed by employees regarding communications made by management during the course of investigations. *See Turner v. Halliburton Co.,* 240 Kan. 1, 722 P.2d 1106 (1986).

In the present case, the court finds that plaintiff's defamation claim rests solely on applicable law of the state of Kansas. To adjudicate the claim, it would not be necessary to interpret any provisions of the collective bargaining agreement. Accordingly, the court finds that plaintiff's defamation claim is not subject to RLA pre-emption.

■ Finally, defendants argue that plaintiff's claim for tortious interference should be pre-empted by the RLA. It is somewhat difficult to determine exactly what actions plaintiff relies on to form the basis of his tortious interference claim. In his complaint, defendant states that "as an Airline Transport Rated Pilot, with 6,000 hours experience, Arnold held a business expectancy, advantage, and relationship with the probability of future economic benefit to him." Plaintiff further alleges that "except for the conduct of Paquette and Air Midwest in pressuring pilots to operate their aircraft in an inappropriate manner, and falsely accusing Arnold of participating in a 'union slowdown,' and improperly operating aircraft under his command, Arnold was reasonably certain to have continued to exercise privileges of his Airline Transport Rating as an airline pilot." Thus, it appears that plaintiff is claiming that Air Midwest's wrongful termination of him has damaged his ability to obtain employment as a pilot in the future.

■ The court does not believe that plaintiff's tortious interference claim, if indeed he had one, would be pre-empted by the

RLA.[3] In Kansas, the requirements for tortious interference with a prospective business relation are:

(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff;

(2) knowledge of the relationship or expectancy by the defendant;

(3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy;

(4) intentional misconduct by the defendant; and

(5) damages suffered by the plaintiff as a direct result of defendant's conduct.

See Maxwell v. Southwest Nat. Bank, Wichita, Kan., 593 F.Supp. 250, 253 (D.Kan.1984); see also Turner v. Halliburton, 240 Kan. 1, 722 P.2d 1106 (1986).

Plaintiff's purported claim of tortious interference, if indeed he had one, would be based on Kansas law and would not require interpretation of provisions of the collective bargaining agreement. Accordingly, the court finds that the claim is not preempted by the RLA.

### B. Sufficiency of Plaintiff's State Law Claims

#### 1. Wrongful Termination and Retaliatory Discharge

In order to succeed on his wrongful termination claim, it would be necessary for plaintiff to show that the parties' course of dealing, along with the policies contained in the employee handbook, gave rise to an implied contract between plaintiff and Air Midwest prohibiting Air Midwest from terminating him without just cause, and that Air Midwest in fact terminated him without just cause. See Morriss v. Coleman Co., 241 Kan. 501, 738 P.2d 841 (1987); Allegri v. Providence–St. Margaret Health Center, 9 Kan.App.2d 659, 684 P.2d 1031 (1984); Berry v. General Motors Corp., 838 F.Supp. 1479 (D.Kan.1993).

The question of whether an implied contract in employment exists requires a factual inquiry, and the intent of the contracting parties is normally a question of fact for the jury. Morriss, 241 Kan. at 512. In the present case, the question of whether an implied contract existed is not discussed by the parties. However, defendants do not base their summary judgment argument on the lack of existence of an implied contract. Rather, defendants argue that even if an implied contract did exist, the facts conclusively show that the grounds defendants relied on in terminating plaintiff satisfy the just cause standard.

In its termination letter dated November 6, 1992, Air Midwest relies on the fact that plaintiff admitted that he had engaged in intentional slowdown activities regarding the flying operations of his plane for the purpose of affecting his pay, and that such actions had a negative impact on Air Midwest's business. Plaintiff does not controvert that at the October 27, 1992 meeting he admitted to engaging in a slowdown effort for the purpose of affecting the semi-annual calculation of his routes' block times. He further does not controvert that he stated affirmatively at the meeting that he had engaged in those slowdown activities in order to increase his pay, and that he specifically denied that his actions had anything whatsoever to do with safety. Air Midwest contends that its stated reasons for terminating plaintiff contained in the termination letter, combined with plaintiff's admissions at the October 27, 1992 meeting, constitute just cause for plaintiff's termination.

Plaintiff argues that his admissions at the October 27, 1992 meeting should not be given conclusive effect. Plaintiff contends that the admissions should not be considered because "the alleged confession [was] procured through duress and coercion by Air Midwest and ALPA acting in concert to find a scapegoat. Air Midwest had placed itself out on a limb by accusing union leaders of slow down activities during contract negotiations." Plaintiff contends that these union leaders, to save their own skins, devised a scheme with

---

**3.** As discussed later in this order, the court does not believe that, under the facts of this case, plaintiff's tortious interference claim sets forth a claim for which relief can be granted.

Air Midwest whereby plaintiff would be sacrificed. Plaintiff contends that Air Midwest was aware that his actual reasons for slowing his aircraft dealt with safety concerns, and that his admission in the meeting to the contrary was only procured through duress and coercion. Plaintiff contends that Air Midwest did not actually fire him for the reasons stated in its termination letter, but rather fired him due to his insistence on complying with government safety regulations, which would not constitute just cause for his termination.

At first glance, defendants' argument that Mr. Arnold's admissions at the October 27, 1992 meeting should be given conclusive effect is very appealing. Mr. Arnold makes no argument that if, indeed, he had slowed his aircraft in order to affect his pay scale, such actions would not constitute sufficient grounds for his firing. Thus, it seems logical that Air Midwest should be able to terminate him when he admitted to just such actions at the October 27, 1992 meeting. However, upon a close examination of the evidence presented by the parties, the court finds that there remains a question of material fact whether Air Midwest actually did terminate Mr. Arnold based on his admissions at the October 27, 1992 meeting.

It is apparent from the evidence submitted to the court that the events surrounding Mr. Arnold's termination occurred during a period of great acrimony between ALPA and Air Midwest, who were engaged in bitter collective bargaining negotiations at the time. In the middle of this turmoil, Mr. Arnold decided to undertake a pattern of operation of his aircraft which resulted in a significant slowdown of his aircraft's operation.

Air Midwest proceeded to undertake an investigation which it contends determined that plaintiff's actions were wrongfully taken in order to affect his pay, for which alleged just cause Air Midwest fired him. Air Midwest advances in support of its decision that plaintiff admitted in the October 27, 1992 meeting that he had slowed down his airplane operations in order to increase his pay.

Plaintiff, on the other hand, contends that in meetings held on October 19, 1992 and October 21, 1992 he did not admit that his slowdown actions were in order to affect his pay, rather he asserted in those meetings that his actions were in response to safety concerns. While he admits that he represented at the October 27, 1992 meeting that he took the action to affect his pay he also contends, in essence, that his "confession" was the product of collusion and coercion and that Air Midwest did not really terminate him for that reason, knowing it to be incorrect.

Plaintiff has proffered evidence that he was instructed by Mr. Schleder to tell Air Midwest at the October 27, 1992 meeting that he slowed his plane in order to affect pay because he should "tell them what they want to hear." He contends that he so testified based on Mr. Schleder's advice that that was the best way to save his job. While one plausible explanation would be that Mr. Schleder simply gave him bad advice, the plaintiff basically argues that in the entirety of the circumstances a reasonable jury could infer that Air Midwest put Mr. Schleder up to that advice and then brow beat the plaintiff into heeding it by the conduct of Mr. Paquette and Mr. Hiers at the meeting.

In his declaration attached to his response, plaintiff states that "[d]uring the meeting, Hiers and Paquette were extremely abusive and coercive. I was extremely exhausted and under extreme emotional and economic pressure from my personal family and financial circumstances and from the pressure being put on me by Air Midwest and ALPA." In *Munsell v. Ideal Food Stores,* 208 Kan. 909, 494 P.2d 1063 (1972), a plaintiff employee who contended that he was threatened and abused during an employer's interrogation by being "verbally hammered and hammered to get him to admit that he had stolen company property" was allowed to advance a coercion argument to relieve himself of the conclusive nature of an analogous admission. *Id.* at 912. This is not like an argument of duress to attempt to relieve one party from the binding obligations of a contract mutually entered into by the parties. In that scenario, a higher standard prevails to set aside an agreed to bargained for exchange. *See White v. General Motors Corp., Inc.,* 699 F.Supp. 1485, 1487 (D.Kan.1988), *aff'd* 908

F.2d 669 (10th Cir.1990). Here, a lesser test seems appropriate, at least to decide whether to permit a trier of fact to determine whether the party claiming reliance on the allegedly coerced statement really did rely on it.

Plaintiff has presented evidence that, if believed, would tend to show that defendants were aware that his claimed reason for slowing his operations had to do with safety concerns. He has presented evidence that could give rise to an inference of collusion and of coercion which produced the near fatal admission. Plaintiff has also produced some evidence that a final and irreversible decision to terminate him had been made even before the October 27, 1992 meeting occurred. Finally, plaintiff has produced evidence that Air Midwest knew that his actions would in no way affect the pay scale for pilots, which could give rise to the inference that Air Midwest's claimed reliance on this statement is pretextual. In short, the court finds that plaintiff has, if barely, satisfied his burden of showing that a question of material fact remains as to whether Air Midwest actually terminated him for the reasons stated in the termination letter, which the parties appear to agree would constitute just cause, or whether Air Midwest in fact terminated him for another reason not constituting just cause.

### 2. Retaliatory Discharge

■ Neither defendants nor plaintiff undertake any analysis of Kansas law regarding plaintiff's claim for retaliatory discharge. Kansas does recognize claims for retaliatory discharge in instances where an employee has been discharged in retaliation for exercising a statutory right or complying with a statutory duty. *See Coleman v. Safeway Stores, Inc.,* 242 Kan. 804, 752 P.2d 645 (1988). Such actions frequently have arisen in Kansas where an employee alleges that he or she was discharged in retaliation for filing a worker's compensation claim. See *Coleman,* 242 Kan. 804; *Murphy v. City of Topeka,* 6 Kan.App.2d 488, 630 P.2d 186 (1981). Kansas has also recognized actions based on

the public policy of protecting employees from retaliatory discharge for whistleblowing. *See Palmer v. Brown,* 242 Kan. 893, 752 P.2d 685 (1988); *Moyer v. Allen Freight Lines, Inc.,* 20 Kan.App.2d 203, 885 P.2d 391 (1994).

■ In the present case, plaintiff's retaliatory discharge claim is based on his contention that he was fired in retaliation for operating his aircraft in the manner prescribed by pertinent FAA safety regulations and the operations manual for the aircraft and in contravention of company directives. Whether Kansas would recognize a retaliatory discharge action on these facts is not certain. In the absence of authority or analysis from the defendants as to why this situation would not be within the scope of Kansas' public policy exception, however, the court is unwilling to grant the defendants summary judgment. Accordingly, defendants' motion as to that claim is denied.[4]

### 3. Tortious Interference

The court finds that under the facts of this case, plaintiff has failed to satisfy the required elements necessary to bring a claim for tortious interference. As discussed above, in his tortious interference claim, plaintiff contends that Air Midwest's wrongful termination of him has damaged his ability to obtain employment as a pilot in the future. In Kansas, the requirements for tortious interference with a prospective business relation are:

(1) the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff;

(2) knowledge of the relationship or expectancy by the defendant;

(3) that, except for the conduct of the defendant, plaintiff was reasonably certain to have continued the relationship or realized the expectancy;

(4) intentional misconduct by the defendant; and

---

4. The court notes that, should it be determined that plaintiff has a legitimate retaliatory discharge action under Kansas law based on his compliance with the FAA regulations, the same

questions of fact which were discussed above concerning plaintiff's wrongful termination claim would also preclude summary judgment on plaintiff's retaliatory discharge claim.

(5) damages suffered by the plaintiff as a direct result of defendant's conduct.

See *Maxwell v. Southwest Nat. Bank, Wichita, Kan.*, 593 F.Supp. 250, 253 (D.Kan.1984); see also *Turner v. Halliburton*, 240 Kan. 1, 722 P.2d 1106 (1986).

 Claims for tortious interference with a prospective business relation under Kansas law have universally required interference by a defendant with a specific third party with whom the plaintiff has an existing or expected business relationship. See *Maxwell*, 593 F.Supp. at 250; *Turner*, 240 Kan. at 1. In the present case, plaintiff has presented no specific third party with whom he contends defendants interfered. Rather, defendant is seeking to recover damages based on his inability to secure employment as a pilot in the future with any employer due to the actions of defendants. While such damages may be recoverable in connection with one or more of plaintiff's other claims, the court finds that damages to his employability in general do not constitute grounds for a claim of tortious interference. Accordingly, defendants' motion for summary judgment shall be granted on plaintiff's claim for tortious interference.

### 4. Defamation

 Plaintiff's final state law claim is his defamation claim. As noted above, Kansas law recognizes defamation claims in the context of statements by managerial employees concerning an employee's job performance. See *Luttrell v. United Telephone System, Inc.*, 9 Kan.App.2d 620, 683 P.2d 1292 (1984). Such actions are subject to the affirmative defenses of privilege and truth. *Turner v. Halliburton Co.*, 240 Kan. 1, 7, 722 P.2d 1106 (1986). Kansas law recognizes a qualified privilege to comments made within a work situation if the comments are made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he or she has a duty, if it is made to a person having a corresponding interest or duty. *Luttrell*, 9 Kan.App.2d at 622.

 In the present case, the court finds that it does not have sufficient facts before it to rule out the propriety of plaintiff's defamation claim. It is true that plaintiff has not identified any particular statements which he claims to be defamatory, nor has he identified the persons he claims to have made (or heard) the alleged defamatory statements. However, plaintiff contends that the alleged defamatory statements and the extent of distribution of the statements cannot be determined until the depositions of Air Midwest pilot witnesses and of potential airline employers is completed. On December 1, 1994, this court entered an order at the defendants' request staying discovery in this action pending the court's ruling on defendants' summary judgment motion. In granting the stay, a primary factor that the defendants stressed and that the court considered was the possibility that defendants would prevail on their RLA pre-emption arguments, thus making any further discovery on plaintiff's state law claims unnecessary. Now that defendants' RLA pre-emption argument has been rejected, it appears that the record before the court is insufficient as a basis to grant defendants' motion on plaintiff's defamation claim.[5] In seeking a stay the defendants were presumed to have considered this risk and to have accepted the possibility that they could fall short on a summary judgment motion if the state law claims were not pre-empted but the plaintiff had been short circuited on discovery. Accordingly, defendants' summary judgment motion on this claim is denied.

### C. Plaintiff's Claim Against Air Midwest for Breach of its Duty of Good Faith and Fair Dealing

 In Count VIII of his complaint, plaintiff brings a "hybrid" action against Air Midwest and ALPA, alleging that Air Midwest breached its duty of good faith and fair dealing in discharging plaintiff and that

---

5. Although the court is denying defendants' summary judgment motion on plaintiff's defamation claim, in order to prevail on his claim plaintiff will have to overcome defendants' defenses of privilege and truth. Plaintiff should not interpret the denial of defendants' summary judgment motion as to this claim as an open license to go on a fishing expedition. Only that discovery necessary to establish whether or not a valid defamation claim exists should be pursued.

ALPA's bad faith toward him concerning ALPA's representation of him constituted a breach of ALPA's duty of fair representation. A federal court may exercise jurisdiction over both the company and the union in a "hybrid" situation in which the employer is implicated in the union's alleged breach of its duty of fair representation. *Glover v. St. Louis–San Francisco Ry. Co.*, 393 U.S. 324, 329, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). However, hybrid suits brought pursuant to the RLA are subject to a six-month limitations period. *See Barnett v. United Air Lines, Inc.*, 738 F.2d 358 (10th Cir.1984); *Landry v. Air Line Pilots Ass'n Intern. AFL–CIO*, 901 F.2d 404 (5th Cir.1990).

In an order dated May 24, 1994,[6] this court granted ALPA's motion to dismiss Count VIII of plaintiff's complaint based upon plaintiff's failure to file his action within the applicable six month statute of limitations period. In the order, this court found that the latest plaintiff's duty of fair representation claim could have accrued was in November, 1992, by which time plaintiff knew and repeatedly complained about perceived deficiencies in ALPA's representation that culminated in his "discharge" of ALPA, retention of private counsel and election to pursue his action in federal court.

■■■ The six month statute of limitations period for plaintiff's breach of the duty of good faith and fair dealing against Air Midwest began to run at the same time as plaintiff's breach of the duty of fair representation claim against ALPA. *See Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120 (5th Cir.1990) (district court does not have jurisdiction over company portion of plaintiff's hybrid claim where union portion of plaintiff's hybrid claim is barred by statute of limitations). For the reasons discussed in detail in the court's May 24, 1994 order, and the order denying the motion to reconsider dated August 3, 1994, the court found that plaintiff was aware of the alleged acts and omissions giving rise to his duty of fair representation claim against ALPA in November of 1992. Nonetheless, plaintiff did not

file his complaint until nearly a year later, on October 20, 1993, well after the six month statute of limitations period. Plaintiff does not assert any differing circumstances regarding his claim against Air Midwest that would warrant a different calculation of the limitations period. Rather, he rehashes many of the same arguments that were rejected by the court in the earlier orders. Thus, the court finds that for the same reasons as set forth in the order of May 24, 1994, and the subsequent order dated August 3, 1994 denying plaintiff's motion to reconsider, plaintiff's "hybrid" unfair labor practices claim against Air Midwest is time barred.

### D. Plaintiff's Declaratory Judgment Claim

■■■ Count VII of plaintiff's complaint, which is entitled "Declaratory Judgment," contains three paragraphs as follows:

The February 7, 1989 contract between Air Midwest and its pilots that was negotiated by ALPA as the recognized bargaining unit, makes provisions for a "Systems Board" review on management actions. The review board is comprised of two members appointed by ALPA and two appointed by Air Midwest.

The agreement fails to provide criteria for the measurement of "good cause" to be used in evaluating termination of pilots and fails to provide for any coherent rules of procedure for the conducting of proceedings. Further, it fails to provide for the awarding of damages if they are deemed appropriate.

The "Systems Board" provisions should be determined inapplicable to this controversy both because of the clear conflict between Arnold and ALPA and the vagueness of the provisions themselves.

Plaintiff cites no authority for this "declaratory judgment" claim, and it is difficult for the court to determine exactly what relief he seeks. Defendants argue only that should the court dismiss plaintiff's other claims (which it did not), such relief would be moot.

---

**6.** *Arnold v. Air Midwest, Inc.*, 1994 WL 247442 (D.Kan. May 24, 1994) *reconsideration denied* 1994 WL 482633 (D.Kan. August 3, 1994).

Plaintiff does not address the matter in his response.

The court finds that to the extent plaintiff is seeking a determination that he should be able to bring his claims before this court, without having had to first bring them before the Systems Review process, the court's ruling that the RLA pre-emption doctrine did not prevent plaintiff from bringing his claims in this court had precisely that effect. Beyond that, the court does not see any effect that a favorable ruling on this confusing claim by plaintiff would have on this case. Accordingly, the court finds defendant's requested relief in Count VII to be moot.

### E. ALPA's Motion for Summary Judgment

Cross-defendant ALPA has filed a motion for summary judgment as to the cross-claim of defendant Air Midwest. Air Midwest's cross-claim seeks indemnification from ALPA on the theory that, if Air Midwest is found liable to plaintiff in any respect, it is only because ALPA induced him to improperly slow down his aircraft and to give a false confession. Therefore, argues Air Midwest, ALPA alone would be responsible for any damage or injury to Mr. Arnold arising from those actions and the subsequent termination which resulted therefrom.

The court disagrees with Air Midwest's contention that ALPA alone would be responsible for any damages arising from plaintiff's termination. In order for the factfinder in this case to find in favor of plaintiff on his wrongful termination or retaliatory discharge claims, it would be necessary to find that Air Midwest terminated plaintiff not based on his confession that he had engaged in a slow down to increase his pay, but rather that Air Midwest had terminated him either in retaliation for plaintiff's actions in flying his plane in accordance with FAA safety regulations or for another reason found not to be just cause under an implied employment contract between plaintiff and Air Midwest. In either case, such a finding will involve a finding of wrongdoing on the part of Air Midwest, and will require the factfinder to conclude that Air Midwest in fact did not rely on plaintiff's admissions at the Octo-

ber 27, 1992 meeting in reaching its decision to terminate plaintiff.

The Kansas Supreme Court has set forth the law regarding claims of indemnity as follows:

> There are two traditional situations in which claims of indemnity are allowed. The first occurs where there is an expressed contract of indemnity, such as a "hold harmless" agreement. The second occurs where a contract of indemnity may be implied when one is compelled to pay what another party ought to pay. The implied or constructive liability usually arises when one personally, without fault, is made to pay for a tortious act of another. The person paying has a right of action against the person at fault.

*Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 642, 666 P.2d 192 (1983).

In the present case, plaintiff's remaining claims against Air Midwest are for wrongful termination based on breach of implied contract, retaliatory discharge and defamation. The wrongful termination claim is a contract claim, to which Kansas does not apply implied indemnity. *See Edward Kreamer & Sons, Inc. v. The City of Kansas City, Kansas*, 874 F.Supp. 332 (D.Kan.1995); *Nature's Share, Inc. v. Kutter Products, Inc.*, 752 F.Supp. 371, 387 (D.Kan.1990). As to the retaliatory discharge claim, this is an intentional tort, and would require a factfinder to conclude that Air Midwest intentionally discharged plaintiff in retaliation for his compliance with FAA safety regulations. Such a finding would not be consistent with allowing implied indemnity. Similarly, plaintiff's defamation claim would require a finding of wrongdoing by Air Midwest inconsistent with allowance of implied indemnity. Accordingly, the court finds that ALPA's motion for summary judgment on Air Midwest's cross-claim for indemnity should be granted.

### V. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendants' motion for summary judgment (Doc. # 62) is granted in part and denied in part. The motion is granted as to plaintiff's tortious interference

claim and plaintiff's claim for breach of duty of good faith and fair dealing. The motion is denied as to all other claims by plaintiff.

**IT IS FURTHER ORDERED THAT** cross-defendant ALPA's motion for summary judgment as to the cross-claim of defendant Air Midwest (Doc. # 71) is granted.

**IT IS FURTHER ORDERED THAT** the stay on discovery is hereby lifted and all deadlines and dates established by the court's scheduling orders are in full force and effect.

**IT IS SO ORDERED.**