Fred T. McKIBBEN,
Plaintiff/Appellant,

v.

Janet A. CHUBB, and Merrill Lynch,
Pierce, Fenner and Smith, Inc.,
Defendants/Appellees.

Leland Morris, Jr., and Virginia
Morris, Defendants.

No. 86–1218.

United States Court of Appeals,
Tenth Circuit.

Feb. 26, 1988.

Margie J. Phelps, Phelps-Chartered, Topeka, Kan., for plaintiff/appellant.

Deanne Watts Hay and Stanley R. Parker, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for defendant/appellee, Janet A. Chubb.

Floyd E. Gehrt, Gehrt & Roberts, Chartered, Topeka, Kan., for defendant/appellee, Merrill Lynch, Pierce, Fenner and Smith, Inc.

Before MCKAY, LOGAN and ANDERSON, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

In this diversity action, Fred T. McKibben, plaintiff below, appeals from judgment in favor of Janet A. Chubb and Merrill Lynch, Pierce, Fenner and Smith, defendants, on a variety of tort claims alleging conspiracy, outrageous conduct and interference related to the estate of McKibben's brother. We affirm the decision of the district court.[1]

## I.

Ula V. McKibben died on October 21, 1983. This appeal, brought by his surviving brother, Fred T. McKibben, concerns two related occurrences: (1) the drafting and execution of Ula McKibben's will, and (2) an alleged gift of stock that Ula owned shortly before his death. During August 1983, Ula McKibben was living at his home

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

in Topeka, Kansas with Leland Stanley Morris. On or before August 24, 1983 Morris phoned defendant Janet A. Chubb, told her that Ula was ill and asked that she prepare a will for Ula. On August 24, Chubb brought a will to Ula McKibben's home, where it was executed and witnessed. The will left substantially all of Ula McKibben's assets to Morris. Shortly after the will was executed, Ula was hospitalized in Kansas. In September, Ula's condition improved and his brother Fred took Ula to his home in Mississippi. Ula's recovery was brief, however. He was hospitalized again in Mississippi and died on October 21, 1983.[2] After Ula McKibben's death, the will was admitted to probate by the Kansas court. Fred McKibben, the plaintiff in this action, contested the validity of the will, but was unsuccessful.[3]

In addition, in August 1983, Morris prepared a letter to defendant Merrill Lynch, Pierce, Fenner and Smith, Inc. ("Merrill Lynch") asking that certain shares of stock owned by Ula McKibben be transferred to Morris. Morris signed Ula McKibben's name to the letter. On August 29, 1983, Merrill Lynch completed the transfer and sent a statement to Ula reflecting the changes in the account. Subsequently, Morris requested, in his own name, cash for a fractional share of stock and the stock certificates for the remaining shares. Merrill Lynch mailed a check to Morris on September 22, 1983 and stock certificates on September 29, 1983. During this period, after Ula had been moved to Mississippi, Fred learned of the stock transfer from the notice mailed to Ula by Merrill Lynch. Ula told Fred that he had no recollection of authorizing or directing Morris to write the letter to Merrill Lynch. Through his attorney, Fred contacted Merrill Lynch on September 27, 1983, asserting that the letter of transfer was forged and asking Merrill Lynch to stop the transfer. A letter making the same request, and including a power of attorney signed by Ula McKibben was received by Merrill Lynch on October 3, 1983.

In addition to contesting the will in the Kansas probate proceeding, Fred McKibben brought this diversity action in federal court against Morris, Chubb, and Merrill Lynch, alleging a variety of tortious acts in connection with the disposition of Ula's property. The district court granted summary judgment to defendants Chubb and Merrill Lynch on all claims and certified those judgments as final under Fed.R.Civ. P. 54(b). McKibben appeals the judgments in favor of Chubb and Merrill Lynch. The claims against Morris are not part of this appeal.

McKibben launches a broad attack on the district court decision. Regarding defendant Chubb, the appeal alleges that the district court erred by: (1) dismissing the claim for interference with inheritance; (2) granting summary judgment for Chubb on the claim for civil conspiracy; and (3) granting summary judgment for Chubb on the claim for intentional infliction of emotional distress. Against defendant Merrill Lynch, the appeal charges that the court erred by: (1) dismissing the claim for interference with inheritance; (2) granting summary judgment for Merrill Lynch on McKibben's survival claim for fraudulent stock transfer; and (3) granting summary judgment for Merrill Lynch on the claim for intentional infliction of emotional distress. Against both defendants, Fred McKibben argues that summary judgment was inappropriate because genuine issues of material fact remain in dispute and that

---

2. This brief summary omits many of the allegations concerning Morris's treatment of Ula McKibben, the circumstances surrounding the execution of the will and the details of Ula's illness and death. Because the claims against Morris are not a part of this appeal, and we hold that neither Chubb nor Merrill Lynch are liable for the actions of Morris, repeating those allegations here would serve no purpose. Similarly, the details of McKibben's illness, hospital-ization and death are not relevant to the claims against Chubb and Merrill Lynch.

3. The will was initially admitted to probate in December 1983. In July 1986, the Kansas Court of Appeals affirmed the decision admitting the will to probate. No appeal was taken from that decision. *In re Estate of Ula Virgil McKibben, Jr.,* No. 58, 447, slip op. (Kan.Ct.App. July 11, 1986) [722 P.2d 595 (table) ] (mem. decision).

the district court erred in certifying those judgments for appeal.

## II.

We turn first to the procedural claims against both defendants. "When reviewing a grant of summary judgment, this court must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains and, if not, whether the substantive law was correctly applied." *Franks v. Nimmo,* 796 F.2d 1230, 1235 (10th Cir.1986) (citations omitted). "In determining whether any genuine issues of material fact exist, the record must be construed liberally in favor of the party opposing the summary judgment." *McVay v. Western Plains Corp.,* 823 F.2d 1395, 1398 (10th Cir.1987). However, conclusory allegations by the party opposing summary judgment are not sufficient to establish an issue of fact and defeat the motion. *Id.* Finally, we may affirm the granting of summary judgment if any proper ground exists to support the district court's ruling. *Lindsey v. Dayton–Hudson Corp.,* 592 F.2d 1118, 1124 (10th Cir.), *cert. denied,* 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979).

In this case, Fred McKibben asks that we reverse the district court's summary judgment but identifies no specific material facts in dispute and cites no factual disagreements in the record. Furthermore, our own review discloses no genuine issues of material fact. Accordingly, summary judgment is an appropriate remedy if the substantive law has been correctly applied.

■ Fred McKibben also argues that the district court improperly granted final judgment certification under Fed.R.Civ.P. 54(b).[4] The certification allows the appeals against Chubb and Merrill Lynch to proceed, even though the claims against Morris are still pending.

Certification under Rule 54(b) is a two-step process. Initially, the district court must determine that the judgment is final. *Curtiss–Wright Corp. v. General Elect. Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980); *Wheeler Machinery v. Mountain States Mineral Enter., Inc.,* 696 F.2d 787, 789 (10th Cir.1983). The judgment "must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss–Wright,* 446 U.S. at 7, 100 S.Ct. at 1464, (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)); *see also Wheeler Machinery,* 696 F.2d at 789. Second, the district court must determine that there is no just cause for delay. *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465. We have characterized this determination as a balancing test, weighing "Rule 54(b)'s policy of preventing piecemeal appeals against the hardship or injustice that might be inflicted on a litigant because of the delay." *United Bank of Pueblo v. Hartford Accident & Indem. Co.,* 529 F.2d 490, 492 (10th Cir.1976) (citation omitted). The Supreme Court has suggested that the district court should "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss–Wright,* 446 U.S. at 8, 100 S.Ct. at 1465. The district court considered these factors and weighed the resulting equities in favor of finality for both Chubb and Merrill Lynch.[5]

---

4. Rule 54(b) provides in part: "When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

5. Notably the court found with regard to Chubb that "the salient facts with respect to ... the other defendants differ significantly," *Mem.Op.,* Jan. 2, 1986, at 3–4, and with respect to Merrill Lynch that "the claims against the remaining defendants ... involve a completely different factual basis." *Mem.Op.,* Jan. 30, 1986 at 2. The court also found that neither defendant should be forced to endure the additional ex-

In reviewing the certification by the district court, we are told by *Curtiss–Wright* that the "proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridicially sound and supported by the record." *Curtiss–Wright*, 446 U.S. at 10, 100 S.Ct. at 1466. We are directed to "scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals," but if that evaluation is correct, "the discretionary judgment of the district court should be given substantial deference," and we "should disturb the trial court's assessment of the equities only if [it] ... was clearly unreasonable." *Id.*

Fred McKibben asserts that there is a "legal and factual identity" among the claims against Chubb and Merrill Lynch and the remaining defendant, Morris. Our review of the record finds that the district court's determination is correct. While there is a common factual predicate for the claims, i.e., Ula McKibben's death, the claims against the three defendants are based on different actions. Chubb's drafting of the will and Merrill Lynch's transfer of the stock are fully separable from the alleged wrongful conduct by Morris. Moreover, we do not find that the district court's weighing of the equities is "clearly unreasonable." Accordingly, we reject Fred McKibben's argument that Rule 54(b) certification was improper and proceed to review the merits of the appeal.

### III.

The district court dismissed the claims of interference with inheritance against both defendants, relying on the reasoning of *Maxwell v. Southwest Nat'l Bank*, 593 F.Supp. 250 (D.Kan.1984). In *Maxwell*, the court determined that a federal district court's diversity jurisdiction did not extend to interference with inheritance claims in Kansas where the plaintiff had an "adequate and available" remedy in the will contest in the Kansas courts.

▪ Federal courts have only limited power in probate matters and may not probate or administer a will. However, they may "entertain actions against administrators, executors, or other claimants in which plaintiffs seek to establish claims against an estate." 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3610, at 484 (1984); *see Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946). Federal jurisdiction in such matters depends upon state law:

"[I]f a state vests its own general courts of equity with jurisdiction to hear suits involving contested wills, the federal courts in the state may enforce that right, and may entertain concurrent jurisdiction over those suits when diversity of citizenship exists. But a federal court may not afford a remedy if the state regards a contest over the validity of a will as incidental or ancillary to the probate proceedings. Thus, federal jurisdiction over these actions is dependent on state practice."

C. Wright, A. Miller & E. Cooper, *supra* at 500 (footnotes omitted). The majority of federal courts of appeals, including the Tenth Circuit, have adopted this standard:

"The standard for determining whether federal jurisdiction may be exercised is whether under state law the dispute would be cognizable only by the probate court. If so, the parties will be relegated to that court; but where the suit merely seeks to enforce a claim *inter partes*, enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed."

*Lamberg v. Callahan*, 455 F.2d 1213, 1216 (2d Cir.1972); *see also Nichols v. Marshall*, 491 F.2d 177, 180–81 (10th Cir.1974); *Ledbetter v. Taylor*, 359 F.2d 760, 761 (10th Cir.1966); *Patterson v. Wynkoop*, 329 F.2d 59, 60 (10th Cir.1964); *Rice v. Sayers*, 198 F.2d 724, 725–26 (10th Cir.), *cert. denied*, 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 680 (1952); *McElroy v. Security Nat'l Bank*, 215 F.Supp. 775, 779 (D.Kan.1963).

pense of monitoring the continuing litigation on the remaining, unrelated claims.

The court in *Maxwell* analyzed an interference with inheritance claim to determine whether "the claims are such as would traditionally have been cognizable only in a probate court or whether the claims are such as could be asserted in a court of general jurisdiction." *Maxwell*, 593 F.Supp. at 252. Relying on *Axe v. Wilson*, 150 Kan. 794, 96 P.2d 880 (1939) and *Rishel v. McPherson County*, 122 Kan. 741, 253 P. 586 (1927), the court concluded that "an individual's remedy when victimized by another's fraud and undue influence in the inducement of the execution of a will lies in an action to contest the will and not in an action for damages when the remedy of the will contest is adequate and available." *Maxwell*, 593 F.Supp. at 253 (quoting *Hinman v. Petefish*, No. 79–4049 (D.Kan. March 2, 1983) (mem. decision)); *see also Foss v. Wiles*, 155 Kan. 262, 124 P.2d 438, 444 (1942) ("We have repeatedly ruled that an action which in effect contests the will is a will contest action and must be brought as such under the contest statute or not at all.").

■ The court below, following *Maxwell*, focused on whether an action contesting the validity of the will was an "adequate and available" remedy for Fred McKibben's claim. Certainly, such an action was available; McKibben had in fact, contested the will. Furthermore, the action provided an adequate remedy for the claim against Chubb, for "if the plaintiff had challenged the will and succeeded, he could have ob-

tained all the relief he could receive as damages in this case." *Maxwell*, 593 F.Supp. at 253. On appeal, Fred McKibben argues only that the Kansas proceedings were inadequate because the charges of undue influence in the drafting and execution of the will were "overshadowed by discussion concerning the inability of appellant's counsel to appear at the initial … probate hearing." *Brief of Appellant*, at 10. Initially, we note that the mere fact that the Kansas courts did not excuse McKibben's failure to appear at the hearing does not render that proceeding inadequate. More importantly, McKibben' has grossly mischaracterized the record. Upon rehearing and appeal, the Kansas courts considered the substantive issues raised in the will challenge, concluding that Ula McKibben had testamentary capacity and was not unduly influenced.[6]

■ The district court properly dismissed the claim against Chubb. When a claim is brought charging undue influence or fraud in the execution of a will, that action is ancillary to the challenge of the will and belongs in the Kansas probate proceedings, not in federal court.[7] However, the court also dismissed the claim against Merrill Lynch, without distinguishing between the two claims. While the ultimate decision was correct—both claims should have been dismissed—we rely on a different rationale than that adopted by the district court.

■ *Maxwell* does not apply to the claim against Merrill Lynch for two reasons.

---

**6.** The Kansas District Court, responding to Fred McKibben's motion for a new trial, found that "any prejudice suffered by respondent was certainly cured by the subsequent court hearings granted [Fred McKibben] at which he was allowed to fully explore the areas of Deceased's testamentary capacity and the status of the relationship existing between Deceased and Leland Morris." *In re Estate of Ula Virgil McKibben*, No. 83 P 584, letter op. at 3, (Kan.Dist.Ct. June 5, 1985). The court then proceeded to review the evidence again. Similarly, the Kansas Court of Appeals found no flaws in the proceedings: "[T]he trial court allowed [Fred McKibben] to present his evidence at the hearing on the motion to vacate. Therefore, [Fred McKibben] was not prejudiced by the fact the trial court admitted the will to probate without the benefit of appellant's evidence." *In re Estate of Ula Virgil McKibben, Jr.*, No. 58,447, slip op. at 6, (Kan.Ct.

App. July 11, 1986) [722 P.2d 595 (table) ] (mem. decision). The court of appeals also considered McKibben's evidence challenging the will and found it insufficient.

**7.** Kansas probate courts were abolished in 1977 and probate proceedings transferred to the district courts. McKibben does not raise this issue on appeal, but it is appropriate to ask if *Axe* and *Rishel* survive the unification of the Kansas courts. That question was answered in *Quinlan v. Leech*, 5 Kan.App.2d 706, 623 P.2d 1365 (1981). In *Quinlan*, the Kansas Court of Appeals affirmed the principle that exclusive probate jurisdiction "over all matters incident and ancillary to the administration of a decedent's estate" should be applied in post-unification proceedings. *Id.* 623 P.2d at 1367–68 (citation omitted).

First, a will contest is not an adequate remedy for this claim. The property at issue was transferred before Ula McKibben died; it was not part of the estate that passed by the contested will. Even if Fred McKibben's challenge to the will had succeeded, ownership of the stock would not have been affected. Second, Kansas courts have drawn a clear jurisdictional distinction between actions to remove property from an estate in probate and actions to bring property into such estates.

"[W]hen one seeks to remove assets out of an estate of a decedent, the probate court has exclusive original jurisdiction of the matter. When an executor or administrator seeks to bring property into the assets of an estate of a decedent, or otherwise to realize something of benefit to the estate, the action is properly brought in the district court or some other court of competent jurisdiction."

*Boldridge v. Estate of Keimig*, 222 Kan. 280, 564 P.2d 497, 500, *cert. denied*, 434 U.S. 967, 98 S.Ct. 509, 54 L.Ed.2d 453 (1977); *see also McElroy v. Security Nat'l Bank*, 215 F.Supp. 775, 779 (D.Kan.1963); *In re Estate of Matthews*, 208 Kan. 492, 493 P.2d 555, 562 (1972).[8] Thus, Kansas law does not stand as a jurisdictional bar to Fred McKibben's interference with inheritance claim against Merrill Lynch in federal court.

■ However, we find other grounds for affirming the district court's decision to dismiss the claim. Assuming that the Kansas courts recognize the tort of intentional interference with inheritance,[9] such an action may be brought only by a party with a prospective inheritance. That is, the tortious act of the defendant must prevent the plaintiff from receiving property that he would otherwise inherit.[10] As a matter of law, McKibben's claim fails to establish this critical element.

Ula McKibben's will, devising the bulk of his estate to Morris, enjoyed a presumption of validity when it was filed. That presumption was validated when the will was admitted to probate on December 19, 1983. In January 1984, when the complaint against Merrill Lynch was filed, and in January 1985 when the district court dismissed the claim, Fred McKibben had no prospective inheritance. An action to restore the transferred stock to Ula McKibben's estate was pointless. For even if Fred McKibben was successful, the stock would remain in the hands of Morris. It would simply pass by the terms of the will, rather than as a disputed *inter vivos* gift.[11] Therefore, we hold that McKibben failed to state a cognizable interference with inheritance claim against Merrill Lynch and affirm the district court's decision dismissing that claim.

### IV.

■ McKibben asks that we reverse the summary judgment for Merrill Lynch on

---

8. Each of these cases speaks of actions where the executor or administrator seeks to bring property into the decedent's estate. However, the party bringing the action is not an important element in determining jurisdiction for these claims. Thus, we conclude that any party (in this case, decedent's brother) with standing to bring property into the estate could bring the action in a court of general jurisdiction.

9. In *Axe v. Wilson*, 150 Kan. 794, 96 P.2d 880 (1939), the "Kansas Supreme Court was directly confronted with the issue of whether Kansas recognized the tort of intentional interference with an inheritance. After listing the conflicting cases on the question, the court specifically declined to decide the issue." *Maxwell*, 593 F.Supp. at 252 (quoting *Hinman v. Petefish*, No. 79–4049 (D.Kan. March 2, 1983) (mem. decision)). We have found no later cases that resolve this question. Accordingly, it is only for

the purposes of this appeal that we assume the Kansas courts would recognize a cause of action on these facts.

10. The *Restatement (Second) of Torts*, § 774B (1979) defines the tort as follows:

"One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."

*See also Peffer v. Bennett*, 523 F.2d 1323, 1325 (10th Cir.1975) (interference with inheritance requires that "defendant intentionally interfered with the giving or leaving of property to the plaintiff").

11. The will included a residuary clause leaving everything to Morris. Fred McKibben was given some savings bonds and nothing more.

the claim for fraudulent transfer of stock. This claim is brought as a survival action and Merrill Lynch argues that McKibben has no standing to bring such a claim. Under Kansas law, "[a] survival action allows the personal representative to recover damages accrued by the injured party between the date of injury and death for the benefit of the deceased's estate." *Mason v. Gerin Corp.*, 231 Kan. 718, 647 P.2d 1340, 1343 (1982). McKibben is not the administrator of his brother's estate and cannot sue in that capacity. Instead, he relies on *Brothers v. Adams*, 152 Kan. 675, 107 P.2d 757 (1940) where the Kansas court allowed the decedent's husband to maintain an action to bring property back into decedent's estate even though he was not named executor in his wife's will. In language that appears applicable to Fred McKibben's claim, the Kansas court stated:

> "Certainly the heir at law is not to be left without a remedy just because the person who should on account of his position as executor bring the action is the same person who should be sued.... [H]eirs at law, next of kin and legatees are allowed to maintain such actions in their own names when the administrator['s] ... interests are antagonistic to those of the heirs, where he is guilty of fraud or collusion with the party to be sued or where he is unwilling or refuses to act."

*Id.* 107 P.2d at 764–65. However, McKibben overlooks one critical fact that distinguishes the claim in *Brothers*. Under the terms of his wife's will, Brothers was entitled to one-half of all his wife's property. *Id.* at 764. Thus, he would share in any property returned to the estate. In contrast, Fred McKibben's bequest under his brother's will is limited to specific savings bonds. He has no general interest in the estate. As we have said before, even if the stock is returned to the estate, it belongs to Morris. Under these facts, McKibben has no standing to bring this claim against Merrill Lynch.[12]

12. The district court granted summary judgment for Merrill Lynch based on a theory of collateral estoppel. We prefer to dispose of the claim on the question of standing.

## V.

The district court granted summary judgment for Chubb and Merrill Lynch on McKibben's claim for intentional infliction of emotional distress and for Chubb on the claim of civil conspiracy. McKibben failed to offer evidence to establish essential elements of both claims. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When the party moving for summary judgment makes a showing that there is no evidence to establish an essential element of the claim, the burden then shifts to the party opposing the motion. That party must respond with evidence or citations to the record that dispute the motion for summary judgment. *Id.* 106 S.Ct. at 2557 (Brennan, J. dissenting). *See* Note, *The Movant's Burden in a Motion for Summary Judgment*, 1987 *Utah L.Rev.* 731, 749–50.

The elements of both claims in Kansas are clear. In *Dawson v. Associates Financial Serv. Co.*, 215 Kan. 814, 529 P.2d 104, 109 (1974), the Kansas Supreme Court recognized an action for emotional distress as stated in the *Restatement (Second) of Torts* § 46(1) (1963): "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."

Liability for extreme emotional distress has two threshold elements that must first be determined by the court: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff is in such extreme degree that no reasonable person should be expected to endure it. *Burgess v. Perdue*, 239 Kan. 473, 721

P.2d 239, 242 (1986); *Roberts v. Saylor,* 230 Kan. 289, 637 P.2d 1175, 1179 (1981).

■ The court below found that McKibben failed to meet the first threshold requirement against either Chubb or Merrill Lynch; their conduct was not extreme or outrageous.[13] We agree. According to the Kansas Supreme Court, outrageous conduct:

"may be found only in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

*Roberts,* 637 P.2d at 1179.[14] In this case, Chubb drafted a will and Merrill Lynch transferred stock pursuant to a letter apparently signed by the owner. No reasonable fact finder could find this conduct to be extreme or outrageous and Fred McKibben's attempts to link these actions of Chubb and Merrill Lynch to the death of Ula McKibben are unavailing.

■ The necessary elements for a civil conspiracy claim in Kansas are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate cause thereof." *Stoldt v. City of Toronto,* 234 Kan. 957, 678 P.2d 153, 161 (1984) (citation omitted).

The district court found no meeting of the minds between Chubb and Morris as to any course of action, no wrongful act by Chubb and no proximate cause linking Chubb to Ula's death. The first finding is dispositive. There is absolutely no evidence in the record to suggest that Chubb was anything more than a casual acquaintance of Morris and Ula McKibben retained to draft Ula's will. On appeal, Fred McKibben cites no evidence to indicate that Chubb conspired with Morris to cause Ula McKibben's death or take his property. Fred's only response is that Chubb, as an "experienced attorney" must have been aware of the scheme. *Brief of Appellant,* at 11–12. This unsubstantiated assertion will not defeat Chubb's motion for summary judgment.

The district court's decision is AFFIRMED.

---

13. It also appears from the record that the plaintiff failed to meet the second threshold requirement—severe emotional distress caused by defendant's conduct—but there is no reason to reach that question here.

14. A brief review of some cases where the Kansas courts have refused, as a matter of law, to find outrageous conduct demonstrates the difficulty in meeting this standard. *See Burgess,* 721 P.2d 239 (after plaintiff's son died, defendant doctor informed her that he had the son's brain); *Hoard v. Shawnee Mission Medical Ctr.,* 233 Kan. 267, 662 P.2d 1214 (1983) (defendants incorrectly told plaintiffs that their daughter had died); *Hanrahan v. Horn,* 232 Kan. 531, 657 P.2d 561 (1983) (defendant told class that plaintiff was a suspect in the disappearance and murder of his son); *Roberts,* 637 P.2d 1175 (defendant doctor made insulting remarks to plaintiff patient prior to surgery); *Wiehe v. Kukal,* 225 Kan. 478, 592 P.2d 860 (1979) (defendant threatened plaintiff's husband with pitchfork).