917 P.2d 963

**William Art RIENHARDT,**
**Plaintiff–Appellant,**

v.

**Hilda KELLY, Tom Kelly, Jane Morris**
**and Fay Bush, Defendants–**
**Appellees.**

No. 16347.

Court of Appeals of New Mexico.

March 7, 1996.

Thomas L. Popejoy, Popejoy Law Offices, Albuquerque, for Appellant.

Patsy D. Reinard, Socorro, for Appellees.

## OPINION

APODACA, Chief Judge.

1. Plaintiff William Arthur Rienhardt appeals from the trial court's order dismissing him as an excessive plaintiff. Plaintiff and the New Mexico State University Foundation (the Foundation) had jointly filed a cause of action to set aside a lease/purchase contract. At a summary trial, the trial court dismissed Plaintiff as excessive and declared an agreement between Plaintiff and the Foundation to file the suit as champertous and thus void as against public policy. Plaintiff raises five

issues on appeal: (1) whether Plaintiff was properly stricken as an excessive plaintiff, (2) whether the agreement between Plaintiff and the Foundation was champertous, (3) whether the trial court erred in its finding of fact that the Foundation had chosen not to pursue litigation independent of the agreement, (4) whether champerty could be raised as a defense if one of the parties to the agreement had an independent interest in the matter, and (5) whether the agreement was authorized and favored under New Mexico law. We hold that Plaintiff did have an interest independent of the agreement and thus conclude that he was a real party in interest and that the agreement was not champertous. We reverse the trial court's dismissal of Plaintiff as a party to the suit.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Plaintiff is the legally adopted son of decedents William Arch Rienhardt (Arch) and Fay Walker Rienhardt (Fay). Before 1987, Arch and Fay executed several sets of wills, each of which included Plaintiff and the Foundation as devisees. In 1987, Arch and Fay executed virtually identical wills providing that (1) upon the death of the first spouse, the deceased spouse's share would be held in trust for the surviving spouse and that (2) upon the death of the last spouse, Plaintiff would inherit all cash, vehicles, oil, gas, and mineral rights less $5000, with the Foundation having the right to the residuary. In 1990, Arch and Fay executed new wills providing that Plaintiff would receive $10,000 and, with the exception of some small gifts, the Foundation would receive the balance for scholarships as long as Hilda Kelly, Arch's niece, did not veto any proposed scholarship program. Fay died later that year. In 1992, Arch entered into a lease/purchase contract with Defendants Hilda and Tom Kelly (the Kellys) regarding certain land known as the Rienhardt Ranch (the Ranch). The contract provided that the Kellys would be entitled to purchase the Ranch, valued at approximately $425,000, for a nominal sum after Arch's death. Arch died later that year, but, before Arch's death, the Kellys had already recorded a deed conveying the Ranch to them.

3. Legal counsel for the Foundation explained to its Board that the school would receive nothing from Arch's estate unless the 1992 lease/purchase contract was set aside, but the Board, mindful of the potential for high litigation costs, decided not to pursue the matter. Plaintiff disputes the trial court's finding that the Foundation ever decided to forego litigation. In any event, in 1993 Plaintiff contacted the Foundation, and the parties entered into a written agreement under which they would together file an action to set aside the 1992 lease/purchase contract. This agreement provided that Plaintiff would pay all legal costs incurred in the lawsuit and that, if the parties were successful in setting aside the 1992 documents, the Foundation would give its entitlement of the Ranch to Plaintiff for $125,000 plus twenty-five percent of the agreed value of the other assets received. Plaintiff and the Foundation then brought suit, charging that the 1992 lease/purchase contract was procured through the undue influence of the Kellys and that Arch lacked sufficient mental capacity to enter into the contract.

4. At the summary trial, the trial court determined that Plaintiff did not have "a genuine independent interest" in the matter and "but for the agreement would gain nothing if this litigation were successful." Having also determined that the Foundation did have an interest in the matter, the trial court concluded that the agreement between Plaintiff and the Foundation was champertous on its face and thus void as against public policy. The court consequently dismissed Plaintiff as a party to the action.

## II. DISCUSSION

5. Because we determine that Plaintiff did have a real party interest sufficient to pursue litigation independent of the Foundation and that the agreement between Plaintiff and the Foundation was not champertous, we need not address Plaintiff's issues three and four.

6. Concerning the issues we do address, Plaintiff disputes the trial court's findings of fact that the Foundation was the only party plaintiff with an independent interest in the litigation, that the agreement between

Plaintiff and the Foundation was champertous, and the two conclusions of law that restate those findings. Because the two findings of fact are actually conclusions that mirror the trial court's conclusions of law, we believe the trial court erred in labeling them as findings. As a result, because only conclusions of law are challenged, our standard of review on appeal is whether the trial court correctly applied the law to the facts. *Investment Co. of the Southwest v. Reese*, 117 N.M. 655, 657, 875 P.2d 1086, 1088 (1994).

### A. Real Party In Interest

7. Unless specifically provided to the contrary or inconsistent with its provisions, the Rules of Civil Procedure govern proceedings under New Mexico's Probate Code. NMSA 1978, § 45–1–304 (Repl.Pamp.1995).[1] The trial court concluded that Plaintiff was not a real party in interest as defined by SCRA 1986, 1–021 (Repl.1992). That provision provides that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." SCRA 1–021, however, does not mention "real party in interest;" the term is instead introduced by SCRA 1986, 1–017(A) (Repl. 1992). Thus, whether or not Plaintiff was justly stricken as an excessive plaintiff depends on whether or not he was a real party in interest under SCRA 1–017(A), not SCRA 1–021.

8. SCRA 1–017(A) requires that "[e]very action be prosecuted in the name of the real party in interest." One is a real party in interest if (1) he is the owner of the right being enforced, and (2) he is in a position to discharge the defendants from the liability being asserted in the suit. *Jesko v. Stauffer Chem. Co.*, 89 N.M. 786, 790, 558 P.2d 55, 59 (Ct.App.1976). We consider each of these requirements separately.

### 1. Owner Of The Right Being Enforced

9. To determine if Plaintiff in this case is the owner of the right being enforced,

we must look to the Probate Code. An "interested person" for purposes of the Probate Code "includes heirs, devisees, children, spouses, creditors, beneficiaries and any others having a property right in or claim against a trust estate or the estate of a decedent." NMSA 1978, § 45–1–201(A)(19) (Repl.Pamp.1989). If one has a property right in the estate of a decedent, he is an "interested person" under this section of the probate code, and it follows that, if he qualifies as such, he also would constitute an owner of a right being enforced under the first prong of SCRA 1–017.

10. Appellees do not argue that Plaintiff has never had a property right in the Ranch. Instead, relying on certain findings of the trial court, Appellees argue (and the trial court found) that Plaintiff's "claim is extremely remote and not sufficiently concrete to give him a genuine independent interest in this litigation." Appellees base this argument on the contention that Plaintiff has no interest in the 1992 lease/purchase contract, and, even if that were set aside, Plaintiff has no interest in the Ranch under the 1990 will (and in fact could have his cash inheritance reduced to a nominal sum under a no-contest clause for unsuccessfully challenging that document).

11. It is true that, according to the 1992 lease/purchase contract and the 1990 will, Plaintiff has no rights in the Ranch. However, Plaintiff, as Arch's adopted son, had an interest in the entire estate as an heir under the laws of intestacy, *see* NMSA 1978, § 45–2–103(A) (Repl.Pamp.1989) ("The part of the intestate estate not passing to the surviving spouse ... or the entire intestate estate if there is no surviving spouse, passes ... to the issue of decedent...."), and the corresponding right to petition to set aside informal probate or to have an order of intestacy issued, *see* NMSA 1978, § 45–3–401(A)(2)(3) (Repl.Pamp.1993). *See also* NMSA 1978, § 45–1–201(A)(16), –(20) (Repl.Pamp.1989);

---

1. Because Arch died on December 17, 1992, citations to the New Mexico Rules of Civil Procedure and the Probate Code are to the provisions applicable at the time of decedent's death. *Aldridge v. Mims*, 118 N.M. 661, 663, 884 P.2d 817, 819

(Ct.App.), *cert. denied*, 118 N.M. 585, 883 P.2d 1282 (1994). (1995 pamphlet is cited here because Section 45–1–304 has not changed since Arch's death).

*In re Estate of Holt,* 95 N.M. 412, 414, 622 P.2d 1032, 1034 (1981) (adopted person considered child of adopting parent) (later codified as NMSA 1978, § 45–2–114(B) (Repl. Pamp.1995)). Thus, he also had an interest in recovering any property wrongfully taken from the estate.

12. The New Mexico Supreme Court addressed a strikingly similar issue in *In re Stern's Will,* 62 N.M. 411, 311 P.2d 385 (1957). In *Stern,* decedent's heirs at law (an aunt and cousins), excluded from decedent's will, protested the will at probate and were dismissed by the trial court. The trial court ruled that the rights of the heirs were cut off because earlier purported wills of the decedent, which had not been probated, made no provision for the heirs. The trial court's implication was that these heirs did not have adequate standing in the contested will because they had no direct interest in it, and, even if they did have standing and were successful in setting aside the contested will, they had no interest under any prior will and thus would not inherit under any of them. Therefore, the trial court concluded, that the heirs had no rights to contest. As a result, the trial court dismissed the heirs' protest.

13. Our Supreme Court disagreed and reversed the dismissal. The Court ruled that the trial court erred in considering evidence of the five prior wills in determining the validity of the contested will. *Id.* at 418, 311 P.2d at 390. The Court first explained that, because the heirs would have succeeded to an interest in decedent's property had he died intestate, their rights vested at the moment of his death. *Id.* at 413–14, 311 P.2d at 387. The heirs had every right to contest any will that would in effect strip them of their vested rights. *Id.; see also* NMSA 1978, § 45–3–401 (Repl.Pamp.1989); *In re Morrow's Will,* 41 N.M. 723, 729, 73 P.2d 1360, 1364 (1937). *Stern* stated that "the existence of wills executed formerly but not probated cannot serve to defeat the contest of a will offered for probate." *Stern,* 62 N.M. at 416, 311 P.2d at 388–89. In other words, the possibility that the heirs might not inherit under a prior will if the contested will was invalidated was a premature concern, and the existence of the prior wills should not affect the heirs' vested rights to

decedent's property. *See id.* at 418, 311 P.2d at 390; *cf. In re Richter's Will,* 42 N.M. 593, 597, 82 P.2d 916, 918–19 (1938).

14. In this appeal, Plaintiff does not contest a will or codicil, but instead contests the granting of the Ranch for a nominal price under the 1992 lease/purchase contract. Plaintiff does not have an interest in the Ranch under the 1992 lease/purchase contract or the 1990 will, which presumably would distribute the remainder of Arch and Fay's property. However, his property interest pursuant to the laws of intestacy is directly affected by the lease/purchase contract. As *Stern* teaches, Plaintiff's ability to contest the lease/purchase contract and protect his rights as a devisee or heir should not be affected by the existence of an earlier unprobated will that does not devise property to him. Therefore, because Plaintiff has a property right in the entire estate of the decedent, he is deemed an "interested party" under the Probate Code and thus satisfies the first prong of SCRA 1–017. In light of our discussion, Kellys' argument to the contrary, as well as the trial court's determination, are speculative and premature at best.

15. Appellees argue in their brief-in-chief that *Stern* is distinguishable because the 1990 will was admitted to probate. The fact that the 1990 will was apparently submitted for informal probate, however, does not affect Plaintiff's standing to challenge the transfer made before Arch's death and the legality of the lease/option to purchase.

### 2. Position To Discharge A Defendant From Liability

16. We have determined that a person who at one time stood to inherit through the intestacy laws has a property interest in the extent of his inheritance. It follows that such a person also has the power to discharge a defendant from liability. In fact, in the present case, Plaintiff negotiated an agreement discharging further liabilities of at least one of the original defendants (The Good Samaritan Retirement Village of Socorro, New Mexico). Because Plaintiff meets both the first and second prongs necessary for him to be considered a real party in interest under SCRA 1–017, it was error for the trial court to dismiss him as an excessive plaintiff.

698

### B. Champertous Agreements

■ 17. Champerty is defined as "a bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds" *Black's Law Dictionary* 231 (6th ed. 1990); *see also Bank of Santa Fe v. Petty,* 116 N.M. 761, 764, 867 P.2d 431, 434 (Ct.App.1993) (champerty is "the practice of purchasing a lawsuit"), *cert. denied,* 117 N.M. 10, 868 P.2d 655 (1994).

■ 18. The case law is clear, however, that, where a person has an interest in a suit, as we have determined Plaintiff has in this appeal, "he may rightfully assist in the prosecution ... of such suit, either by furnishing counsel or contributing to the expenses, and may, in order to strengthen his position, purchase the interest of another party, in addition to his own, and that agreements of this character and under these circumstances are valid." *Anderson v. Anderson,* 12 Ga. App. 706, 78 S.E. 271, 272 (1913).

19. Here, because we have already determined that Plaintiff is not a stranger to and in fact has an interest in the lawsuit, his agreement with the Foundation could not have been champertous. *See Mitchell v. Amerada Hess Corp.,* 638 P.2d 441, 444 (Okla.1981) ("Whether this interest is great or small, vested or contingent, certain or uncertain, it affords a just reason to the party who has such an interest to participate in the suit of another.") (quoting *Worrell v. Roxana Petroleum Corp.,* 144 Okla. 297, 291 P. 47, 48 (1930) (quoting 11 C.J. 250)).

### C. Agreements Between Successors To Decedent

■ 20. In light of our determination that Plaintiff is a real party in interest in the subject litigation and that his agreement with the Foundation was not champertous, Plaintiff and the Foundation had the right to contract to alter their interests. NMSA 1978, Section 45–3–912 (Repl.Pamp.1995) provides in pertinent part:

> Subject to the rights of creditors and taxing authorities, competent successors may agree among themselves to alter the interests, shares or amounts to which they are entitled under the will of the decedent,

or under the laws of intestacy, in any way that they provide in a written contract executed by all who are affected by its provisions.

21. In fact, these types of agreements are not only permitted, but they are traditionally favored by the courts. *See In re Estate of Cruse,* 103 N.M. 539, 542, 710 P.2d 733, 736 (1985).

22. Plaintiff and the Foundation entered into a written agreement that legally altered their interests under the will and that only affected their interests. The agreement was thus valid under the laws of New Mexico.

### III. CONCLUSION

23. We hold that Plaintiff is a real party in interest. For that reason, we conclude that the trial court erred in dismissing Plaintiff as an excessive plaintiff and in declaring his agreement with the Foundation void as champertous. The trial court's order dismissing Plaintiff as a party is therefore reversed. We remand for further proceedings consistent with this opinion. Plaintiff is awarded his costs on appeal.

24. **IT IS SO ORDERED.**

FLORES and BUSTAMANTE, JJ., concur.