**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 7 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

WILLIAM ART RIENHARDT,

  Plaintiff-Appellee,

v.

HILDA KELLY and TOM KELLY,

  Defendants-Appellants,

  and

MARVIN GARD and DON KLEIN,

  Defendants.

Nos. 96-2161 & 97-2143

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-94-1438-LH)

---

George Holdt Garver of G. Holdt Garver, Chartered, Albuquerque, New Mexico,
for Defendants-Appellants in No. 96-2161.

Hilda and Tom Kelly, Magdelena, New Mexico, pro se in No. 97-2143.

Thomas L. Popejoy (Brian E. Jennings, with him on the brief) of Popejoy Law
Offices, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **ANDERSON** , **HENRY** , and **BRISCOE** , Circuit Judges.

---

**HENRY** , Circuit Judge.

William Rienhardt, a resident of California, sued Tom and Hilda Kelly, residents of New Mexico, in diversity in federal district court for tortious interference with inheritance, a tort under New Mexico common law. Mr. Rienhardt won a jury verdict against the Kellys for $200,000 and was awarded costs against them in the amount of $9,981.06. The jury found that the other two named defendants, Marvin Gard and Don Klein, were not liable, and Mr. Rienhardt did not appeal that verdict.

In appeal 96-2161, the Kellys petition this court for relief from the jury verdict on several grounds: (1) that under the probate exception the district court lacked subject matter jurisdiction to hear the tort claim; (2) that the district court should have abstained from hearing the tort claim; and (3) that the district court erred in excluding testimony relating to the Kellys' character for unduly influencing others. In appeal 97-2143, submitted on the briefs, the Kellys challenge the costs awarded for deposition transcripts and copies of bank and telephone records. Because the probate exception precludes federal jurisdiction over part of Mr. Rienhardt's suit, and because the jury's verdict is not severable into the issues over which the court did have jurisdiction and those over which it did not, we set aside the verdict. Accordingly, we vacate and remand the decision of the district court for further proceedings. The abstention doctrines do not bar

further proceedings on the issues over which the district court may exercise jurisdiction. The challenge to the exclusion of character evidence is mooted by the resolution of the first issue – however, we do note that our initial review of the district court's decision does not reveal an abuse of discretion through exclusion of this evidence. Additionally, we set aside the cost award.

## I.  BACKGROUND

A.   Factual Setting

Mr. Rienhardt is the son of William Arch Rienhardt ("Arch") and Fay Rienhardt ("Fay"). Ms. Kelly is the niece of Arch and Fay, and Mr. Kelly is Ms. Kelly's husband. During the last few years of his parents' lives, Mr. Rienhardt resided in California, while the Kellys lived in New Mexico close to Arch and Fay, with whom they had frequent contact. Mr. Rienhardt believes that the Kellys exercised undue influence over the disposition of his parents' assets.

Arch and Fay executed several wills giving Mr. Rienhardt up to $100,000 of their estate, but they never drafted a testamentary document which would have given Mr. Rienhardt their main asset, their ranch, worth approximately $425,000. Fay died before Arch, but her last will was reciprocal with his and would have left $10,000 to Mr. Rienhardt upon Arch's death. However, before Arch died he executed trust documents that superseded the $10,000 testamentary gift and left

3

only his oil and gas rights to Mr. Rienhardt. Those trust documents did not dispose of Arch and Fay's ranch because, on the same day Arch signed the trust documents, Arch and the Kellys entered into a lease/option agreement on the ranch. The lease/option agreement allowed the Kellys to purchase the $425,000 ranch for one dollar upon Arch's death. Inconsistently, at the same time he executed the lease/option contract, Arch deeded the ranch to the Kellys, and the Kellys recorded the deed before Arch died and without paying the dollar to exercise their option.

B.     The Lawsuits

Asserting several different causes of action in several different legal fora, Mr. Rienhardt is challenging his parents' last testamentary acts and the inter vivos ranch transfer. First, he is contesting the probate of Fay's will, see Socorro County Dist. Ct. No. PB-91-04, and Arch's testamentary documents, see Socorro County Dist. Ct. No. PB-93-02, in New Mexico probate actions. Second, he is suing in New Mexico state court to set aside the lease/option agreement and deed, both of which purport to give the ranch to the Kellys. See Socorro County Dist. Ct. No. CV-93-101; Rienhardt v. Kelly, 917 P.2d 963 (N.M. Ct. App. 1996). The state court dismissed him as an excessive plaintiff from the suit challenging the lease/option agreement and deed, and he then filed in federal court the instant

4

diversity suit under the New Mexico common law tort of intentional interference with inheritance. Although the New Mexico Court of Appeals readmitted him to the state suit challenging the lease/option agreement and deed,      see Rienhardt , 917 P.2d at 967, he followed the tort suit in federal district court to its conclusion:  a jury verdict in his favor.

In his tortious interference with inheritance suit in federal court, Mr. Rienhardt sued the Kellys directly, alleging

> that beginning in 1988 and continuing through Arch's death in 1992, defendants Hilda and Tom Kelly, . . . with the assistance of defendants Don Klein and Marvin Gard, intentionally took advantage of decedents' vulnerability and established confidential relationships with Arch and Fay, thereafter taking control of their lives, destroying Art's relationship with them,   *causing them to replace wills favoring him* and not to make wills leaving him the ranch, and unduly profiting by procuring the transfer of the family ranch and other assets to themselves for little or no consideration.

App. at 24 (emphasis added).  He asserted damages to his expectancy of inheritance in Arch and Fay's estate of over $400,000.  The jury agreed that the Kellys tortiously interfered with Mr. Rienhardt's inheritance, but only in the amount of $200,000.  The record does not reveal how the jury derived this sum.


C.      The Challenged District Court Rulings

Before the commencement of the trial in federal court, the district judge heard from the parties regarding the pendency of the state court proceedings but

5

declined to dismiss or abstain from hearing Mr. Rienhardt's suit pending the outcome of those cases. See Aplts' App. in No. 96-2161 at A-62 to A-67. At trial, the Kellys attempted to offer testimony that, they claim, showed their character not to "have a disposition to exert undue influence." See id. at A-111. The district court ultimately refused to admit this testimony, concluding that the Federal Rules of Evidence mandated the exclusion of character testimony offered in civil cases to prove that a party acted in conformity with that character trait. See id. at A-116. After trial, Mr. Rienhardt moved for costs associated with prosecuting his case. The clerk of court denied $893.10 of Mr. Rienhardt's litigation costs but ordered the Kellys to pay the remainder, totaling $9,088.66. See Rec. in No. 97-2143 vol. I, doc. 93. The Kellys applied to the district court for review of the clerk's order. See id. at doc. 94. The district court vacated the clerk's order and awarded Mr. Rienhardt $9,981.16, his full costs request. See id. at doc. 95. The Kellys appeal these rulings.

## II.   PROBATE EXCEPTION

A.   Standard of Review

Because the probate exception to jurisdiction deprives a federal court of

6

subject matter jurisdiction, see Markham v. Allen, 326 U.S. 490, 494 (1946), we review a determination that the probate exception is not applicable under the same standard we apply to other reviews of subject matter jurisdiction:  de novo, see Beren v. Ropfogel, 24 F.3d 1226, 1228 (10th Cir. 1994).

B.      Scope of the Probate Exception

"[A] federal court has no jurisdiction to probate a will or administer an estate." Markham, 326 U.S. at 494.  Nonetheless, federal courts do "have jurisdiction to entertain suits in favor of . . . heirs and other claimants against a decedent's estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." Markham, 326 U.S. at 494 (quotation marks omitted).  Because our jurisdiction is thus limited by the scope of the probate proceedings, federal jurisdiction over probate matters depends on state law. See McKibben v. Chubb, 840 F.2d 1525, 1529 (10th Cir. 1988).

> The standard for determining whether federal jurisdiction may be exercised is *whether under state law the dispute would be cognizable only by the probate court*.  *If so, the parties will be relegated to that court*; but where the suit merely seeks to enforce a claim inter partes, enforceable in a state court of general jurisdiction, federal diversity jurisdiction will be assumed.

McKibben, 840 F.2d at 1529 (emphasis added).

7

C.    Applying the Probate Exception

Our Circuit has twice before explored the relationship between the tort at issue here–intentional interference with inheritance–and the probate exception. See id. at 1525; Beren, 24 F.3d at 1226. The McKibben opinion is particularly helpful to the instant issue. The question there presented was whether the probate exception prevented federal jurisdiction over two tortious interference with inheritance claims. The first claim challenged property transfers under a will, and the second challenged inter vivos property transfers. As to the will transfers, we affirmed the district court's refusal to accept jurisdiction because a claim of undue influence in the execution of a will is ancillary to a will challenge and belongs in state probate court. See McKibben, 840 F.2d at 1530. Although the probate court had already denied his will contest, had the plaintiff succeeded in the state proceedings "'he could have obtained [in the probate court] all the relief he could receive as damages in [his tort] case [in federal court].'" Id. (quoting Maxwell v. Southwest Nat'l Bank, 593 F. Supp. 250 (D. Kan. 1984)). In contrast, we accepted federal jurisdiction over the challenged inter vivos transfers of the decedent's property because (1) a will contest was not an adequate remedy for property that was transferred before the testator died and thus was not part of the testator's estate and (2) Kansas law gave courts of general jurisdiction power to hear actions to bring property into an estate. See id. at 1531.

8

Mr. Reinhardt's federal suit may similarly be separated into distinct claims. Although he pled a single claim for tortious interference with inheritance, his claim ultimately rested upon three allegations of undue influence on the part of Hilda and Tom Kelly: (1) that the 1990 wills and the 1992 testamentary agreement, which replaced the 1987 wills favoring plaintiff, were the product of undue influence on the part of the Kellys ("[Mr. and Mrs. Kelly] *causing* [Arch and Fay] *to replace wills favoring him* "); (2) that the Kellys exerted undue influence on plaintiff's parents to prevent them from executing new wills more favorable to plaintiff ("[Mr. and Mrs. Kelly] causing [Arch and Fay] . . . not to make wills leaving him the ranch"); and (3) that the Kellys exerted undue influence on plaintiff's father to purchase the ranch ("unduly profiting by procuring the transfer of the family ranch and other assets to themselves for little or no consideration").

1. *The First Allegation.* – Alleging tortious interference with an expected inheritance by "[Mr. and Mrs. Kelly] *causing* [Arch and Fay] *to replace wills favoring him* ," Mr. Rienhardt has alleged that the wills and testamentary agreement subject to ongoing probate proceedings are the result of undue influence. The elements of the tort are "(1) the existence of an expectancy; (2) a reasonable certainty that the expectancy would have been realized, but for the interference; (3) intentional interference with that expectancy; (4) *tortious*

9

*conduct involved with interference, such as fraud, duress, or undue influence*; and (5) damages." Doughty v. Morris, 871 P.2d 380, 384 (N.M. Ct. App. 1994) (emphasis added). On the first allegation, the expectancy stems from the 1987 will favoring Mr. Rienhardt, the alleged interference is the replacement of that will with the 1990 wills and 1992 testamentary agreement, and the tortious conduct required for element four amounts to an allegation that those 1990 wills and the 1992 testamentary agreement are the result of such tortious conduct. Necessary to resolution of Mr. Rienhardt's first allegation is a resolution of the very issue presented in probate proceedings, whether the 1990 and 1992 wills and testamentary agreement are the result of undue influence.

Applying McKibben and Beren, we hold that the first allegation is ancillary to the probate proceedings and thus jurisdiction by the federal district court is precluded by the probate exception. It can and should be challenged only in the ongoing state probate proceedings. See, e.g., In re Estate of Kerr, 918 P.2d 1354, 1355 (N.M. App. 1996) (allowing undue influence issue to be raised in probate proceedings); In re Estate of Strozzi, 903 P.2d 852, 853 (N.M. App. 1995) (same); Lucero v. Lucero, 884 P.2d 527, 532 (N.M. App. 1994) (contestants of will have burden of establishing undue influence); N.M. Stat. Ann. § 45-3-407 (1978) (same); see also Dragan v. Miller, 679 F.2d 712, 717 (7th Cir. 1982) ("where . . . the interference consists of having procured a will that disinherits the plaintiff, it

10

appears that the tort action must be brought as an ancillary proceeding . . . to the original [probate] proceeding"). Indeed, it appears plaintiff is currently attempting to challenge his mother's 1990 will and his father's 1992 testamentary agreement on those precise grounds in the state probate proceedings. See Socorro County Dist. Ct. No. PB-91-04, and Socorro County Dist. Ct. No. PB-93-02.

In Doughty v. Morris, New Mexico recognized the tort of intentional interference with inheritance. See 871 P.2d at 384. Mr. Rienhardt has pled his case under the rubric of this tort. However, the Doughty case recognized the tort with regard to an inter vivos transfer of property that would have been subject of the will. See id. at 382. Mr. Rienhardt, via his first allegation, would have us recognize the tort with regard to interference *with a will*. To do so would be to expand the tort in a manner inconsistent with the rationale for recognizing the tort in the first place. The Doughty case recognized the tort where a brother used undue influence to cause his mother to transfer him most of her property inter vivos. The mother's will specified that her estate should be divided equally between the brother and the sister, but due to the inter vivos transfers, her estate was negligible at the time of her death. See id. Thus, the brother effectively circumvented the intent of the will without interfering with the will. No challenge to this behavior could be brought in probate proceedings, because the will remained valid and executable according to its language. Thus, to remedy

11

this seemingly remedy-less situation, the New Mexico court recognized the tort.

Mr. Rienhardt's first allegation, that the 1990 wills and the 1992 testamentary agreement, which replaced the 1987 wills favoring plaintiff, were the product of undue influence on the part of the Kellys, is precisely the type of claim that is presentable in probate proceedings. See, e.g., In re Estate of Kerr, 918 P.2d 1354 (N.M. App. 1996). As such, we do not believe it is the type of claim the New Mexico courts meant to recognize at law. Where the issue is properly within the jurisdiction of the probate court, the tort may not be used to circumvent the jurisdiction of that court.

The first allegation is within the probate court's exclusive jurisdiction, and therefore, federal courts are precluded from hearing the claim. See McKibben, 840 F.2d at 1529.

2. *The Second and Third Allegations.* – Mr. Rienhardt's second and third allegations, however, are more akin to the allegation in the Doughty case. On these charges, Mr. Rienhardt seeks damages from the Kellys for their alleged wrongs. This suit, rather than being cognizable only by a probate court, is enforceable in a state court of general jurisdiction. To paraphrase Markham, 326 U.S. at 494, in hearing the tort claim based on these two allegations, the federal district court did not interfere with the probate proceedings, assume general jurisdiction of the probate, or take control of the property in the custody of the

12

state court. Therefore, the probate exception does not apply to deprive federal diversity jurisdiction over these allegations.

3. *The Non-Severability of the Jury Verdict.* – We do not know on what ground the jury reached its verdict. The jury may have done so at least in part on a cause of action over which the district court had no jurisdiction: that is, the tort claim based on the first allegation. Therefore, the verdict must be vacated and the latter two allegations remanded for retrial.

## III.   COLORADO RIVER DOCTRINE

The parties' abstention arguments to this court focused generally on the Younger Abstention Doctrine, see Younger v. Harris, 401 U.S. 37 (1971), but we conclude that the Colorado River Doctrine, see Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), is the controlling law in this case. We further conclude that the Colorado River Doctrine does not mandate dismissal of Mr. Rienhardt's suit.

A.   The Younger Abstention Doctrine Is Not Applicable

Younger abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief–such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those

13

proceedings–when such relief could adequately be sought before the state court. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996); Pennzoil Co. v. Texaco, 481 U.S. 1, 10 (1987) ("The first ground for the Younger decision was 'the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law.'") (quoting Younger, 401 U.S. at 43); Colorado River, 424 U.S. at 816-17; Younger, 401 U.S. at 43-44, 49; see generally Erwin Chemerinsky, Federal Jurisdiction §§ 13.1-.4 (2d ed. 1994) (providing a critical analysis of the history, basis, and rationale of the Younger Doctrine). The district court was not asked to give, and did not provide, any equitable relief that interfered with the related state proceedings. Therefore, Younger is not applicable here.

B.    The Colorado River Doctrine Is Applicable

The Colorado River Doctrine controls when deciding, as we must here, whether a district court should have stayed or dismissed a federal suit pending the resolution of a parallel state court proceeding. See Colorado River, 424 U.S. at 817-18; Quackenbush, 517 U.S. at 717 (citing Colorado River, 424 U.S. at 800, for the proposition "that federal courts have the power to refrain from hearing . . . cases which are duplicative of a pending state proceeding"). In other words, the

14

Colorado River Doctrine was adopted to avoid duplicative litigation. See generally Chemerinsky, supra, §§ 14.1-.4 (providing a critical analysis of the history, basis, and rationale of the Colorado River Doctrine).

C.    Standard of Review

We review district court decisions regarding deferral under the Colorado River Doctrine for abuse of discretion. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983).

D.    Scope of the Colorado River Doctrine

In Colorado River, the Court first announced that federal courts may not use the abstention doctrines to refuse to exercise jurisdiction over a suit for non-equitable relief that duplicated ongoing state litigation. See Colorado River, 424 U.S. at 813, 816-818. However, the Court then concluded that judicial economy concerns may justify deferral of a federal suit when pending state litigation will resolve the issues presented in the federal case. See id. at 817-20. The justification for deferral in such an instance is not to vindicate "Our Federalism," as the abstention doctrines do, Younger, 401 U.S. at 44, but rather to preserve judicial resources:

> Although this case falls within none of the abstention categories, there are principles unrelated to considerations of proper

15

> constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."

Colorado River, 424 U.S. at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952)).

Because the Colorado River Doctrine springs from the desire for judicial economy, rather than from constitutional concerns about federal-state comity, and because the Colorado River Doctrine is an exception to our jurisdictional mandate from Congress, the Doctrine may only be used when "the clearest of justifications . . . warrant[s] dismissal." Id. at 819. Thus, while Colorado River's judicial economy goals allow a federal court to avoid the "virtually unflagging obligation . . . to exercise the jurisdiction given [it]," id. at 818, the appropriate circumstances for deferral under the Colorado River Doctrine are "considerably more limited than the circumstances appropriate for abstention" and must be "exceptional." Id. at 817-18; but see Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 253 n.20 (4th Cir. 1993) ("Although the Supreme Court made clear that the Colorado River Doctrine was technically not a form of abstention, the distinction has been lost, and we see no reason to revive it.") (citation omitted); Chemerinsky, supra, §§ 14.2-.4 (treating Colorado River and its progeny as abstention cases).

16

Hence "our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist *exceptional circumstances*, *the clearest of justifications*, that can suffice under Colorado River to justify the surrender of the jurisdiction." Moses H. Cone, 460 U.S. at 25-26 (internal quotation marks omitted) (emphasis added). Despite the temptation for federal courts to use the Doctrine as a means of stemming the rising tide of litigation, suits in federal court are not easily swept away by Colorado River.

E.      Applying the Colorado River Doctrine

Of Mr. Rienhardt's two claims which withstood analysis under the probate exception – (a) that the Kellys exerted undue influence on plaintiff's parents to prevent them from executing new wills more favorable to plaintiff, and (b) that the Kellys exerted undue influence on plaintiff's father to purchase the ranch – the latter is in some manner at issue in a similar state court proceeding. See Socorro County Dist. Ct. No. CV-93-101; Rienhardt v. Kelly, 917 P.2d 963 (N.M. Ct. App. 1996). However, because the four factors enumerated by the Court in Colorado River do not strongly counsel against retaining jurisdiction, we cannot say the district court abused its discretion in refusing to abstain from hearing the case. Those four factors are: (1) simultaneous jurisdiction over a single res; (2)

17

the relative convenience of the fora; (3) order in which proceedings were initiated; (4) the need to avoid piecemeal litigation.     See Colorado River , 424 U.S. at 819.

The two actions do not cause the two courts to assume simultaneous jurisdiction over a single res, because there is no res at issue in the federal action. Rather the federal action is one for damages resulting from tortious conduct. There is no contention that the federal forum was any less convenient to the parties than the state forum. "The . . . order in which jurisdiction was obtained by the concurrent forums – far from supporting the stay, actually counsel[s] against it." Moses H. Cone , 460 U.S. at 19. Although the state action was initiated prior to the federal action, Mr. Rienhardt was dismissed from that action as an excessive plaintiff. While he was later readmitted by the New Mexico Court of Appeals, see Rienhardt , 917 P.2d at 967, the federal suit was initiated in the interim. Thus, arguably the federal suit was initiated prior to Mr. Rienhardt's instant involvement in the state suit. Finally, the avoidance of piecemeal litigation may counsel against hearing the case in federal court, but this factor alone might be too insignificant in the district court's discretion to be considered the sort of "exceptional circumstance" in which a federal court is justified in refusing to exercise its jurisdiction.

The district court did not abuse its discretion in refusing to dismiss or grant

18

a stay, and retains jurisdiction over the remaining two allegations to conduct a new trial on remand.

## IV.    CHARACTER EVIDENCE

Having set aside the jury verdict and reversed and remanded the decision of the district court, the issue of whether the exclusion character evidence offered by the Kellys constituted and abuse of discretion is moot.

## V.    COSTS

Having set aside the jury verdict and reversed and remanded for a new trial on the issues over which the district court may exercise jurisdiction, we also set aside the award of costs.  We therefore need not rule on the merits of this appeal.

## VI.    CONCLUSION

Mr. Rienhardt effectively brought three causes of action under a single heading.  The first of these causes of action is actually a charge that the 1990 wills and the 1992 testamentary agreement, that replaced the 1987 will favoring the plaintiff, were the product of undue influence.  This cause of action is within the exclusive jurisdiction of the probate court and therefore is excluded from federal diversity jurisdiction by the probate exception.  Because the jury verdict

does not distinguish between the three causes of action we set aside the verdict and reverse and remand to the district court for a new trial on the latter two causes of action.  As the verdict has been set aside, so too is the award of costs.